## BOWMAN et al., Respondents, v. NORTHERN ACCIDENT COMPANY, Appellant.

### St. Louis Court of Appeals, April 16, 1907.

1. **ACCIDENT INSURANCE: Accidental Death.** In an action on an accident policy, the evidence is examined and held sufficient to sustain a finding by the trial court that the insured came to his death by accidental drowning.

2. ———: **Delivery of Policy.** As to what will constitute delivery of an insurance policy so as to make it an effective contract between the insured and the insurer, depends upon the terms of the application and the circumstances of the case.

3. ———: ———. The application for an accident insurance policy provided "that the application shall not be considered as binding on the company until received and accepted by the secretary at the Home Office," and the application designated the local agent who took the application as the party to whom the policy should be sent. The application was received, accepted, policy drawn, mailed to and received by the local agent, and on the day he received it and before its delivery, the insured was drowned. *Held,* the local agent of the company, being authorized by the insured to receive the policy, it was sufficiently delivered to constitute a contract and an action by the beneficiaries thereon could be maintained.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*C. G. Shepard* and *Henry C. Walters* for appellant.

Delivery of the policy to insured and payment of premium is a condition precedent to the taking effect of the contract of insurance. The policy having never been delivered to the deceased, and the premium never paid there was no contract. Cravens v. Insurance Co., 148 Mo. 599; Kilcullen v. Ins. Co., 108 Mo. App. 61. There was no notice of death given, nor proof of loss furnished the defendant, such notice and proof of loss are matters precedent to plaintiff's right to recover in

this case. Roberts v. Ins. Co., 94 Mo. App. 142; Martin v. Accident Assn., 16 N. Y. Supp. 279; Haywood v. Accident Assn., 85 Mo. 289.

*Ward & Collins* for respondents.

(1) "Both at common law and under the statute of this State even a verbal agreement to insure is binding, and in case of loss will be specifically enforced against the insurer." Baile v. Ins. Co., 73 Mo. 371; King v. Ins. Co., 195 Mo. 290. (2) The method of enforcing specific performance of a contract to issue a policy of insurance after a loss has occurred, is not to compel the issuance of the policy, but to decree payment of the money as if the policy had issued; and this is true although the policy was never delivered or issued, and although the premium agreed to be paid when called for was not tendered until after the loss. Harrison v. Craven, 188 Mo. 602; Coberly v. Coberly, 189 Mo. 18; Holland v. Anderson, 38 Mo. 55; Hamilton v. Hamilton, 59 Mo. 232; 16 Am. and Eng. Ency. Law (2 Ed.), 853. (3) In questions of fact much deference will be given by this court to the findings of the lower court. Lawler v. Lawler, 76 Mo. App. 637; Million v. Million, 106 Mo. App. 683. The death of Charles Bowman by accident need not necessarily be established by direct proof or evidence in the cause, but may be established from facts and circumstances. Laessig v. Travelers Prot. Assn., 169 Mo. 281. Upon the undisputed facts and circumstances in this case, Charles Bowman came to his death by drowning, and the law presumes such drowning was accidental, nothing to the contrary appearing. Lancaster v. Ins. Co., 62 Mo. 121; Meadows v. Ins. Co., 129 Mo. 76; Weller v. Railroad, 164 Mo. 199. (4) "If the application provides that no liability shall attach until the application has been approved by the home office, the company is liable if the person upon whose life the insurance is placed dies after the application is approved." Am. and

Eng. Ency. of Law (2 Ed.), p. 851.; Benefit Assn. v. Conway, 10 Ill. App. 348; Allen v. Accident Assn., 167 Mass. 18; Coker v. Insurance Co., 31 S. W. 703.

GOODE, J.—In August, 1904, Charles Bowman, deceased, made application to an agent of the defendant company at Hayti, in Pemiscot county, for a policy of life and accident insurance. Gunter, the agent to whom the application was made, was general manager of the company for twenty-one counties in Missouri and had subagents working under him. Sometime prior to the application by Bowman, Gunter had taken into partnership J. H. Gillette, and thereafter the firm was Gunter & Gillette. The defendant company had done business with the firm without protest after being notified of the partnership, though Gillette never received a formal appointment to represent the company. The deceased applied for a policy of insurance with an indemnity payable to his parents, the plaintiffs, in case of his accidental death; $500 to each parent. He paid two dollars on the advance premium of $3.50, the agents, to whom this entire premium went, agreeing to wait for the balance until the policy came, as was their custom. The application was forwarded by Gunter & Gillette to the home office of the company at Menominee, Michigan. It was accepted by the secretary of the company and a policy was written and signed in conformity to it and mailed to Gunter at Hayti. The policy reached the postoffice at Hayti on Saturday, and it was taken out by Gunter on Sunday, on which day Bowman, the insured, lost his life by drowning. Gillette insisted that the policy be turned over to plaintiffs; but Gunter refused to do this, saying he would keep it and get "boodle money" from the company for not delivering it. A few days afterwards a telegram came from the home office directing that the policy be not delivered. The company having refused to pay the indemnity stipulated to be paid in

case of accidental death, this action was brought, setting up the foregoing facts and praying the specific performance of the contract of insurance; that the defendant be ordered to issue and deliver the policy to plaintiffs and that plaintiffs have judgment for the sum of $1,000. On the hearing the court found the facts in favor of the plaintiffs for the sum of $1,000. This appeal was prosecuted by the company.

It is said there is no proof the insured lost his life by accident. The burden of proving not only that Charles Bowman was dead, but that his death was due to an accident, was incumbent on the plaintiffs, and we think this was sustained. It was proved he had gone fishing in a lake with some companions, and two or three witnesses swore, without objection, that while engaged in fishing he was drowned. It is true they were not eyewitnesses of the drowning, but nevertheless their testimony was to be weighed. A physician who was summoned and reached the place of the drowning in half an hour after it happened, swore he found Bowman dead and that water ran out of his lungs. The idea of defendant's counsel is that the evidence falls short of proving an accidental death because it fails to show Bowman did not commit suicide. Certainly the court was justified in finding the drowning was accidental, for the deceased was proved to have been in good health and cheerful spirits and to have gone on a pleasure trip. Not a circumstance pointing to suicide was given in evidence. We overrule the exception based on the theory that the evidence did not support the finding of the court that the death of the insured was due to accident. It is earnestly insisted that no contract of insurance had been completed at the time of the death of the insured, because the policy had not been delivered. In support of this point we are cited to several cases denying a recovery of insurance money where, at the time of the loss, there had been no delivery of the policy,

though it had been forwarded to the agent of the company. But in those cases the application for insurance provided that the contract should not take effect until the policy was delivered to the insured and the premium paid. [Horton v. Ins. Co., 151 Mo. 620, 52 S. W. 356; Cravens v. Ins. Co., 148 Mo. 599, 50 S. W. 519; Kilcullen v. Ins. Co., 108 Mo. App. 61, 82 S. W. 966.] There are other cases importing that the contract does not become effective until the applicant is notified of the acceptance of his application or some act is done by the company toward giving him notice; as for instance, the deposit of the policy in the mail, addressed to him. Every case of this kind must stand on its own facts. Gillette swore the firm of Gunter & Gillette was furnished by the company with printed blanks of a uniform character to be filled out by parties desiring insurance. He swore further that a copy of the application accompanied each policy and he saw the policy in question after it was received by Gunter. The transcript contains what purports to be an exact copy of the application, signed by the insured. It contains various warranties and representations about the occupation and health of the insured, and other matters of which the company desired information. Its twenty-first paragraph stated that in forwarding the application to the secretary, Gunter acted as the representative of the insured and the latter agreed "that the application shall not be considered as binding on the company until received and accepted by the secretary at the home office."

The application having been made on one of the company's regular blanks, the paragraph just mentioned constituted a stipulation by the insured that the contract should not be binding on the company until the application was received, and accepted by the secretary, at the home office. The evidence shows the secretary accepted the application and drew and mailed a policy

in accordance with its terms; so that the contingency had happened after which the contract might be binding. At this point the exact contention of defendant's counsel is that the contract was still incomplete because the insured had not been notified of the acceptance of his application; and they cite in support of this proposition the cases supra. No doubt the mere mental assent of the officers of an insurance company to the terms of the application, will not make a contract of insurance. There must be some outward manifestation of their assent. It is not the law that this manifestation must reach the insured person, so that he will be personally apprised that the company has acted favorably on his application. Indeed, it is held, as said above, that putting a letter in the mail notifying him of the company's acceptance or forwarding the policy to him by mail, is sufficient. [1 May, Insurance (4 Ed.), sec. 53.] It is not sufficient, however, as the preceding authorities state merely to send the policy to the agent of the company to be held by him until the premium is paid, if the agreement is that the policy is not to take effect until delivery to the insured. We might agree, too, that the clause quoted from the application in regard to the agent of the company being the representative of the insured in forwarding the application would, if standing alone, have constituted Gunter the agent of Bowman only for the purpose of sending in the application. But the blank application contained, in effect, a direction to the applicant to designate to whom the policy should be sent. There was a blank space opposite these words: "send policy to." The blank was filled in with this direction: "R. Gunter, Hayti, Mo." Therefore, the deceased directed the insurance company, if it accepted his application, to forward the policy to Gunter, who was, by this direction, appointed his agent to receive it. When the company mailed the policy to Gunter pursuant to this direction, to be delivered to the insured, with no conditions

attached to the delivery, it sufficiently signified to the insured its acceptance of his proposal to make the contract binding. [1 May, sec. 60.] To rule otherwise would be to allow Gunter to defeat the obligation of the contract by a scheme in fraud of the deceased for whom he had assumed to act in forwarding the application and receiving the policy.

Other points are raised in the brief which we have examined, but as they present no plausible grounds for reversal they will not be discussed.

The judgment is affirmed. All concur.