## 12130

### BURBAGE *ET AL.* v. JEFFERSON STANDARD LIFE INS. CO.

#### (136 S. E., 230)

1. EVIDENCE—PRESUMPTION ARISES THAT NOTE AND CHECK FOR INSURANCE PREMIUM, MAILED BY INSURER, WERE RECEIVED IN DUE COURSE OF MAIL.—If note and check in payment of insurance premium were mailed to insurance company, presumption arises that they were received by company in due course of mail.

2. INSURANCE—EVIDENCE OF MAILING OF NOTE AND CHECK FOR INSURANCE PREMIUM, WITH CIRCUMSTANCES TENDING TO REBUT PRESUMPTION OF RECEIPT, HELD FOR JURY.—Evidence relative to note and check being mailed to insurance company for payment of premium, together with circumstances tending to rebut presumption that they were received in due course of mail, *held* to present question for jury.

Before Moss, J., Orangeburg, February, 1926. Affirmed.

Suit by Lula Burbage and others against the Jefferson Standard Life Insurance Company. Judgment for plaintiffs, and defendant appeals.

*Messrs. Brooks, Parker & Smith* and *John S. Bowman,* for appellant, cite: *Presumption that letter mailed was received is rebuttable:* 49 L. R. A. (N. S.), 461. *Giving of worthless check for premium does not amount to payment:* 40 A. L. R., 411; 234 P., 673; 102 A. S. R., 298; 6 Ga. App., 721; 93 Ark., 162; 61 C. C. A., 254; 42 L. R. A., 147; *Joyce on Insurance,* Sec. 1144. *Cited to sustain motion for new trial:* 70 S. C., 77. *Policy lapses on failure to pay premium:* 125 S. E., 285; 131 S. C., 405. *Duty of Court to construe written instruments in evidence:* 125 S. C., 285. *Duty of insured under disability clause to ascertain disablement and so notify insurer:* 275 So., 519.

*Mr. C. B. Martin,* for respondent, cites: *Respondent entitled to disability benefits of policy:* 106 S. C., 356. *Proof of loss entirely ex parte:* 49 S. E., 6. *Insurer waived right to full proof of disability:* 85 S. C., 409; 70 S. C., 295. *Cash value of policy should be applied as premiums on failure of insured to pay premiums:* 32 C. J., 1308. *Table of values issued by insurer determine cash value at given date:* 91 S. E., 432. *"To" is term of exclusion:* Anderson's Law Dictionary. *Cash surrender value not automatically reduced by cash loan on policy:* 101 S. C., 267. *Testimony that letter mailed was not received raises question of fact:* 121 S. C., 385. *Beneficiaries of policy have vested rights therein:* 128 S. E., 414; 97 S. C., 430; 77 S. C., 299. *Life policy for benefit of married woman and children:* Civ. Code, 1922, Sec. 4099. *Duty of insurer to give notice of forfeiture:* 139 U. S., 297. *Foreclosure of pledge must be by affirmative action of pledgee:* 78 S. E., 639; 72 S. E., 295. *Respondent entitled to recover face of policy minus debts due insurer from insured:* 82 S. E., 320.

December 30, 1926.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

All of the exceptions are overruled, under the authority of *Cope v. Jefferson Standard Life Insurance Company,* 134 S. C., 532; 133 S. E., 440, and authorities therein cited, and judgment affirmed.

MESSRS. JUSTICES BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE concur.

MR. JUSTICE COTHRAN dissents.

MR. JUSTICE STABLER: I concur in the opinion of Mr. Justice Watts that the judgment in this case should be affirmed, and will state briefly my reasons therefor.

On October 9, 1906, the Security Life & Annuity Company issued a policy of insurance on the life of Miles E. Mims, in the sum of $1,000.00, the surviving children of the insured by his wife, Mary, being designated in the policy as beneficiaries. On September 20, 1912, this contract of insurance was assumed by the defendant; and about December 16, 1923, Mims, the insured, died. Upon refusal of the insurance company to pay to the beneficiaries, the plaintiffs in this case, the amount of the policy, this suit was begun.

For a defense, the defendant alleged that the policy had lapsed by failure of the insured to pay the annual premium of $44.94, due October 9, 1923, and that the value of the policy had been exhausted by loans made to the insured thereon. The jury gave a verdict for the plaintiffs for $480.66.

The defendant appeals to this Court, imputing error to the trial Judge, in refusing its motion for a directed verdict and error in his charge to the jury in several particulars named.

An examination of the record discloses that the annual premium was due October 9, 1923, and that the insured had 30 days of grace in which to make payment. It appears that the insured had borrowed from the company on the policy an amount almost equal to its cash surrender value. Apparently being unable to raise the necessary sum to pay the premium

and the interest then due on the loan, a total of $72.56, the
insured wrote the company on October 24, 1923, inquiring
whether it would allow him "to make a note for any part of
his payment." The company sent him in October, 1923—
whether before or after insured's letter of October 24, we
are unable to say—the following offer of "proposed settle-
ment":

| | |
|---|---:|
| Note for | $ 82.08 |
| Cash | 32.33 |
| | |
| Total | $114.41 |

On November 5, 1923, the company wrote the insured a
letter inclosing a note for $82.07, saying:

"If you will sign (note) and return with check for $32.34,
your canceled note and premium receipt will be sent you."

There was testimony on behalf of the respondents tending
to show that this offer of the company's "proposed settle-
ment" was accepted by the insured, and that, in response
thereto, the note was executed by the insured, and that the
signed note, with a check for the required sum, was duly
mailed to the company. The testimony of Hessy Mims, a
son of the insured, was positive on this point. He testified
that he was acting for his father in the matter and that the
executed note and check were mailed by him to the defendant,
in a properly addressed envelope. Testimony of the appel-
lant tended to show that the note and check were never re-
ceived by the company.

Hessy Mims also testified that the insured had an account
in the Bank of Eutawville, on which bank the check was
drawn of about $40; and that two or three days before the
death of his father, the witness drew out this money, but
made arrangements with the bank at that time to take care
of this check should same be presented for payment. It is
true that, when Hessy Mims, on cross-examination, testified
as to the verbal arrangements with the bank to take care of
the check, the trial Judge remarked:

"I don't think that is competent."

It seems, however, that this testimony was regarded as being before the jury as the appellant was allowed, in reply to the testimony of Mims to call as a witness the bank cashier, J. E. Hinnant, who testified that the insured had no account in the Bank of Eutawville at the time the check is alleged to have been given or for a period of six months prior thereto, and that no money was drawn from the bank nor arrangements made for the payment of the check, as testified to by Hessy Mims.  It appears that, under this testimony, the jury had before them for consideration, along with other issues of fact, the question of such arrangement with the bank for the payment of the check.

Whether the insured accepted the offer of the "proposed settlement" made by the company to him was, under the testimony, a question of fact for the jury. If the note and check were mailed to the insurance company, as the testimony for the respondents tended to show, the presumption arises that they were received by the company in due course of mail.  *Hightower v. Metropolitan Life Insurance Co.,* 121 S. C., 378; 113 S. E., 478.  The testimony, however, of the appellant, that the note and check were never received by the company, taken with other circumstances, tended to rebut such presumption, and the trial Judge properly submitted the question to the jury.

It is not within the province of this Court to say whether testimony given in a case is true or untrue.  The question of the credibility of witnesses is a matter entirely for the jury.

The charge of the trial Judge when taken as a whole, does not disclose any prejudicial error, as complained of by the appellant.

MESSRS. JUSTICES WATTS and BLEASE, and MR. ACTING ASSOCIATE JUSTICE RAMAGE, concur

MR. JUSTICE COTHRAN (dissenting).  Action upon a policy of insurance for $1,000, upon the life of Miles E. Mims, issued by the Security Life & Annuity Company on October

9, 1906, and assumed by the defendant, Jefferson Standard Life Insurance Company, on September 20, 1912 the beneficiaries being the plaintiffs, children of the insured, who died on December 15, 1923.

The defense is that the policy had lapsed on October 9, 1923, by reason of the failure of the insured to pay the premium of $44.94, which was due upon that day.   The fact is conceded that the insured did not pay the premium at that time due, but in rebuttal of the claim of the insurance company that the lapse then and thereby occured, the beneficiaries contend (substantially in the language of counsel for the respondents) :

(1)  That on August 1, 1923, the insured submitted proof of total and permanent disability to the insurance company, and asked for payment thereunder of what money was coming to him.

(2)  That on or abount the last of October or 1st of November, 1923, by invitation of the insurance company, the insured mailed to the insurance company check and note sufficient to pay interest on notes and premium on insurance; that the check was not presented for payment; that on December 13, 1923, the money on deposit to the credit of the insured was withdrawn from the bank, but that arrangements were made with the bank to pay the check when presented.

(3)  That there was a sufficient loan value in said policy to pay the premium due on October 9, 1923; that a loan was requested by the insured for that purpose and refused by the insurance company.

(4)  That the insurance company never "foreclosed its pledge," but gave insured the right to pay his notes until the time of this death, which kept the automatic extended insurance in force; that the policy, by the death of the insured, was converted into a death claim; that the insurance company became both debtor and creditor, with the funds

in hand and should have paid the notes from the $1,000, and remitted the balance to the beneficiaries.

(5) That by the letter of December 11, 1923, the insurance company waived the right to assert a lapse or forfeiture; that this letter was received by the insured on December 13, two days before his death; that he had a reasonable time after the receipt of the letter to act upon it, within which time he died.

As to the first contention: On August 1, 1923, the insured wrote to the insurance company as follows:

"I am in very bad health; will not be here long more. Will you please let me know by return mail what will be the cash surrender value of my policy so I can get the balance of what cash is coming to me so I can use same while I live? Please let me hear from you at once."

The company replied to that letter on August 6, 1923, as follows:

"We have your letter of August 1st requesting the surrender value of your above policy. Your policy is in force with your premiums paid to October 9, 1923, and cannot be surrendered until that date. Against your policy there is a loan of $488 and a lien note for $39.48. This indebtedness, plus the interest on the lien note, will amount to $529 October 9, Your surrender value on that date will be $530; so you see that your indebtedness consumes practically the entire value of your policy."

The provisions in the policy relating to permanent disability is as follows:

"Upon receipt of satisfactory proof of the total and permanent disability of the insured, while this policy is in full force by the payment of premiums, the insured shall have the following options: (1) Continue this policy in full force as a paid-up nonparticipating policy for its face value; or, (2) receive the face value as an endowment, payable in ten equal annual installments, the first installment to be paid immediately upon receipt of proof of total nd permanent dis-

ability.   If the insured should not live to draw the ten annual installments, the remainder will be continued to the beneficiary, or commuted and paid in one sum.

"Proof of total and permanent disability of the insured will be required on forms prescribed by the company, and any medical adviser of the company shall be allowed to examine the person of the insured in respect to any alleged disability."

It will be noted that the insured in his letter of August 1, 1923 was inquiring as to the case surrender value of his policy; he made no claim to the benefits of the disability clause, and made no effort to comply with the conditions that the application be made upon a form to be submitted by the company and that an examination be made by the company's physician.   The reply to this letter cannot be considered as a waiver of these conditions, for they were not at all the subject of the correspondence.   The insured made no election as to the benefits provided for in the disability clause.

The table which was a part of the policy shows that at the end of the 16th year (October 9, 1922) the cash surrender value was $488, and at the end of the 17th (October 9, 1923), it was $530.   The amount due by the insured on his notes, at that time (August 1, 1923) exceeded the cash surrender value of October 9, 1922 ($488), and if he had insisted upon a settlement at that time he should have received nothing.   If he had insisted upon a settlement on October 9, 1923 he would still have been entitled to nothing, for—

The amount due on his notes was .............. $529.85
And the premium was ......................      44.94
                                              _____
                                              $574.79
And the cash surrender value was only ..........  530.00
                                              _____
   A deficiency of ........................  $  44.79

As to the second contention: In October, 1923 apparently after the premium due on October, 1925, had not been paid, and before the letter of the insured dated October 24, the company submitted to the insured a "proposed settlement," by which it appears that they were willing to accept the note of the insured for $82.08 and cash $32.33, making up $114.-41 then due, stated as follows:

| | |
|---|---:|
| Interest on Loan .................... | $ 27.62 |
| Premium October 9, 1923 ............ | 44.94 |
| Old lien note ...................... | 41.85 |
| | $114.41 |
| Note for ......................... $ 82.08 | |
| Cash ............................ 32.33 | |
| | $114.41 |

On October 24th, evidently after receiving this statement, the insured wrote as follows:

"Premium on this policy with loan interest amounts to $72.56. (Just as it appears on the statement, $44.94 plus. $27.62.) Would you allow me to make a note for any part of this payment? Please let me know by return mail."

On October 27th the company replied:

"If there is sufficient loan value under the above numbered policy kindly send me approved lien note maturing April 2nd to make up premium and the outstanding lien note."

The loan value at the end of the 16th year was $530, only a few cents more than the amount due upon the loan notes.

On November 5th, the company wrote:

"I am inclosing herewith note under policy No. 5821 for $82.07. If you will sign and return with check for $32.34 (the terms of the October statement), your canceled note and premium receipt will be sent you. The company advises that this is the best settlement that can be made at this time."

On November 20th, the company wrote:

"As you have not paid your premium amounting to $72.-

56, due October 9th, under your policy No. 6821-A, the receipt had to be returned to the company as the 30 days' grace had expired."

—inclosing a blank application for reinstatement, and offering to take a note for the balance after the insured paid what he could. No reply to any of these propositions appears to have been made.

The plaintiff Hessy Mims, a son of the insured, testified that about the last of October or 1st of November 1923, he mailed his father's note for $82.07 and check on the Bank of Eutawville for $32.34 to the company, in compliance with the proposition made by the company in October, 1923; that on December 13, two days before his father's death, he drew out all that he had in the bank, but arranged with the bank to pay the check for $32.34, should it be presented. I do not think that the Court is obliged to accept as evidence testimony which the overwhelming evidence shows to be untrue.

The note and check appear not to have been received by the company, and the testimony of the cashier of the bank is to the effect that the insured did not have on deposit in his bank a single dollar for period of six months prior to his death; that no money was drawn out, as testified to by Hessy Mims, a few days before his father's death; and that Hessy Mims had made no arrangement to meet the alleged check for $32.34.

As late as November 20th, the company notified the insured that the premium and interest had not been paid as per the October proposition. Hessy Mims was managing the affairs for his father; he must have known of this letter, yet no reply was made to it and no claim that the note and check had been forwarded "about the last of October or first of November." When on December 18th, he notified the company of his father's death, his claim was under the disability clause and no mention was made of the note and check. But if such testimony may be considered as some evidence of the fact that he had mailed the note and check to the com-

pany in acceptance of the October settlement, I do not think that the company would be bound, in the absence of evidence that the communication had been received and that there was sufficient cash in the bank to the credit of the insured applicable to the check. From the terms of the company's letter, I think that it is legitimately inferable that a transmission of the note and check by mail was intended; and that, if the check had been received and was good for the money at the time, the compliance would have been complete; but where it appears that the check was never received, was never cashed, and that there is not only no evidence that it was good at the time, but, on the contrary, positive evidence that it was not, I do not think that it can be justly held that the insured complied with the proposition. 21. R. C. L., 60.

As to the third contention: The request for a loan was not made by the insured until October 24, 1923, as appears by his letter of that date quoted above, after the premium due October 9th, was in default. The company replied (through a local agent) that if the loan value was sufficient to take up the premium and the outstanding lien note, the insured might forward a lien note therefore, presumably to be submitted to the company. The premium due October 9, 1923, not having been paid, the insured was really not entitled to the loan value as of that date ($575), but to that of the previous year ($530).

Assuming, however, that he was entitled to the loan value of $575, that value was necessarily to be reduced by the outstanding indebtedness:

| | |
|---|---|
| Policy loan | $488.00 |
| Interest | 27.62 |
| Old Note | 41.85 |
| Premium | 44.94 |
| | $602.41 |

There was nothing therefore upon which a loan could be based; in fact, a deficiency of $27.41.

As to the fourth contention: By the table, if the insured had paid the premium due October 9, 1923, the extended insurance would have carried the policy for 16 years and 8 months.

The policy contains this provision:

"Any indebtedness existing against this policy at the time of any seettlement shall be deducted from the cash surrender value of the policy, and the other values shall be diminshed proportionately."

The cash surrender value at the end of the 17th year, as-. suming that the premiums due October 9, 1923, had been paid would have been $530.   The amount due by the insured, upon all accounts was $529.85, leaving only 15 cents.

The amount of extended insurance which it would have purchased is negligible, about 1-2/3 days.

As to the fifth contention: The letter of December 11, 1923, which will be reported, shows the anxiety of the company to relieve the insured, of which no advantage was taken. If it was not accepted by the insured during his lifetime it surely could not have changed the legal status of the parties. It is regrettable, of course, that the insured should have paid the premiums upon his policy for 16 years and apparently have lost the benefit of them, but it must be remembered that during these years he received the benefit of insurance which would have been available, if the policy had matured at any time during that period.

It appears, too, that in August, 1923, after he had been ill with cancer for practically a year, and, as his son testified, "we all felt pretty sure he was going to die," he had abandoned all hope of continuing the policy, writing then for what he supposed was the cash surrender value of the policy:

"I am in very bad health, will not be here long more. I have no money and cannot work to make any.   Will you please let me know by return mail what will be the cash surrender value of my policy, so I can get the balance of

what cash is coming to me, so I can use some while I live."

I can see no controlling analogy between the Cope Case cited by Mr. Justice Watts, and the case at bar. The cases are so very different in their facts that a comparison would be tedious and of little assistance. It seems to me clear that the defendant's motion for a directed verdict should have been granted. At the least, the judgment should be reversed and a new trial ordered upon the palpable error of the presiding Judge in charging the jury as follows:

"There is also a provision in the policy loan and the lien note that 30 day's notice is required to give them notice of the forfeiture. * * * The policy loan requires a notice to be sent of the forfeiture, and both sides must be governed by the terms of the policy loan. They must give notice of the forfeiture."

The first paragraph in the above extracts from the charge of the Judge was a flat declaration of the duty of the company to give 30 days' notice of a forfeiture under all circumstances. The defendant was insisting upon a forfeiture on account of the non-payment of the premium due October 9, 1923; that charge eliminated all possibility of recovery by the defendant upon that ground, as there was not effort on the part of the  defendant to show such notice.

The second paragraph is a modification of the defendant's fifth request to charge which had no reference at all to the forfeiture provided for in the loan note, but manifestly had reference to the ground of forfeiture by reason of non-payment of the premium. The emphatic statement of the presiding Judge, "They must give notice of the forfeiture," obviously conveyed the impression to the jury that even if the premium had not been paid and even if the son had not mailed the note and check the defendant could not claim a forfeiture in view of their failure to give 30 days' notice of it.

The jury might well have believed in view of the circumstances related above that the son falsely stated that he had

mailed the note and check and yet have found for the plaintiff upon the ground that the defendant had not complied with the obligation of notice so emphatically imposed upon them. It appears to have escaped the notice of Mr. Justice Stabler that the testimony of the son as to having made arrangements verbally with the bank to honor the check, if presented, after he had drawn out all of the funds, was held by the trial Judge inadmissable. Folio 110.

In 2 Joyce Ins. (2d Ed.) § 1106, it is said:

"Subject to such exceptions or qualifications as exist under statutory provisions, or under some provisions in the policy as to notice, or unless there is a waiver or estoppel, if there is an express provision for forfeiture in case of non-payment of the premium on or before a sepcified day, and the time expires without payment or valid excuse for non-payment, the policy thereupon becomes absolutely void at once without notice of forfeiture or any action on the part of the company; nor need a formal declaration of forfeiture for non-payment of premium, when due, be declared by the company when the policy stipulates for forfeiture for such non-payment; nor is it necessary for the company to make a declaration of forfeiture on its books." *Haggins v. Ins. Co.*, 72 S. C., 216; 51 S. E., 683.

The policy sued upon contains this provision:

"In case of default in the payment of any premium or note therefor, this contract shall cease and determine."