14396

CALDER v. COMMERCIAL CASUALTY INS. CO.

(188 S. E., 864)

*Messrs. Joe P. Lane* and *H. M. Britt,* for appellant,

*Messrs. Cooper & Maher,* for respondent,

December 14, 1936.

The opinion of the Court was delivered by Mr. Justice Fishburne.

This action was brought against the defendant for the recovery of actual and punitive damages arising out of the alleged fraudulent breach of an insurance policy issued to Elva Calder, the wife of the plaintiff, on October 15, 1929. It insured her life for the sum of $50.00, which was payable to the plaintiff, as beneficiary; the policy also provided health insurance and hospital indemnity.

The defendant denied the breach of the contract of insurance, alleged that it had become lapsed by the nonpayment of premiums in accordance with its terms, and was not in force at the time of the death of the insured, which occurred July 4, 1932, a year after the lapse of the policy. It further denied that it had been guilty of any fraudulent or deceitful act in relation to the plaintiff or any one acting in his behalf.

The case was tried in the Court of Common Pleas for Dillon County on July 1, 1935. Upon the conclusion of the testimony the defendant moved, (a) for a directed verdict on the whole case, and (b) for a directed verdict upon the action for punitive damages. The trial Judge granted the motion as to punitive damages, but submitted the question as to actual damages to the jury, who found a verdict for the plaintiff for the death benefit of $50.00 less certain premiums due the company, and deducted therefrom by agreement of counsel. The plaintiff brings this appeal and assigns error in the direction of the verdict as to punitive damages.

The major issue to be passed upon is whether or not there was a scintilla of evidence to be submitted to the jury, tending to show a breach of the insurance contract, accompanied by a fraudulent act.

Under its terms, the policy required the payment of a monthly advance premium of $2.00. It is undisputed that premiums thereon were paid up to May 14, 1931, which maintained the policy in force until on or about June 20, 1931. There is a conflict of evidence as to whether or not a further payment was made on June 19, 1931. The plaintiff's daughter testified that on that day she gave to the rural mail carrier $2.00 with which to purchase a post office money order payable to Commercial Casualty Insurance Company, with instructions to place it, together with a letter addressed to the company, and the premium receipt book, in an envelope furnished by and addressed to the defendant, and mail the same. The records in the local post office at Latta show that a money order for this amount was issued on that date payable to the defendant, which the defendant denies having received. The rural mail carrier did not testify, so that there is no positive evidence that the letter addressed to the defendant, containing the money order and the premium receipt book, was actually deposited in the post office properly stamped for mailing. However, there was introduced in evidence a letter under date of February 4, 1935, addressed to Joe Calder, the plaintiff, from the United States Post Office Department, informing him that there was nothing of record to show that the post office money order referred to was outstanding, and the department therefore presumed that the amount had been duly paid. This letter went on to state that "as paid money orders are destroyed after the expiration of three years * * * it is regretted that it will be impossible to furnish you with a photostat of the paid voucher."

The record discloses that the plaintiff received from the defendant health and hospital payments upon claims duly filed, amounting to $87.50, growing out of illnesses suffered by her between April 3, 1931, and May 26, 1931, and that she died after a lingering illness on July 4, 1932, one year after the lapse of the policy.

Elva Calder, the insured, applied for the policy of insur-

ance through a local insurance agent of the defendant, and, according to the testimony for plaintiff, the insurance agent impressed upon the insured, and the plaintiff (designated therein as the beneficiary), the importance of sending the receipt book to the company with each monthly remittance of the premium. The plaintiff says that he and his wife were told that if this receipt book should not be forwarded with the remittance, they would not be given credit for the payment of the premium, and the policy would become null and void.

This action was brought upon the refusal of the defendant to pay the death claim of $50.00, such refusal being based upon the ground that the policy had lapsed for the non-payment of premiums on or about June 20, 1931. The plaintiff contends that the post office money order for $2.00, together with the receipt book, were duly received by the defendant, but that the receipt book was never returned; that several letters were written to the defendant requesting its return, containing the reiterated statement that the insured desired to continue the payment of monthly premiums, but these letters were never answered. The fraudulent acts charged against the defendant were its failure to credit the disputed payment; its failure to return to the insured the receipt book; failure to furnish blank forms upon which to make claims for illness, after learning that the insured was suffering from a serious disease; cessation of all monthly notices of premiums; and further, that the retention of the receipt book by the company caused the insured to make no further payments. The evidence, in our opinion, on these points, was susceptible of more than one reasonable inference.

It is also argued that the instructions given the insured by the defendant's agent, at the time the application for the insurance was taken, as to the necessity of having the receipt book accompany the remittance, was confirmed by the customary monthly premium notices sent out by the defendant

to the plaintiff, wherein it was stated: "Place a money order or a cashier's check, together with your little yellow premium receipt book, in the envelope which we are enclosing, and mail back to the Commercial Casualty Insurance Company, Second Floor, Hook Building, Columbia, S. C." The plaintiff says that implicit reliance was placed by the insured, and by him, upon the instructions given by the insurance agent, and that the above-quoted statement, repeated monthly, confirmed them in the belief that it would be useless to forward any monthly premium unless they could at the same time send in the premium receipt book. There is also evidence in the record which tends to negative this testimony. All correspondence on behalf of the plaintiff, and the insured (both of whom were persons of very limited education), in connection with the policy and the payment of premiums, was attended to by a married daughter. She and the plaintiff testified that the defendant failed to send blank forms upon which to make claims on account of the illness of the insured, and suddenly stopped sending monthly premium notices.

Two of the alleged grounds of fraud charged against the defendant, as already stated, are that, contrary to its usual custom, it sent no further monthly premium notices to the insured after May, 1931, and failed to return the premium receipt book, although frequently importuned to do so. To rebut this, the defendant, who denied having received the receipt book or the letter thereabout, introduced in evidence a carbon copy of a letter addressed to the insured, bearing date July 24, 1931, expressing surprise that the insured had failed to remit premiums for the months of June and July. The plaintiff denies that he received this letter, calling attention to the nonpayment of premiums. The evidence for the defendant tends to show that this letter was properly stamped, addressed, and deposited in the post office at Columbia, and had never been returned to it by the postal authorities, although a return address was printed on the

envelope. If this letter was so mailed, a presumption of law arises that it was received by the insured in due course of mail; this, however, is a rebuttable presumption. *Burbage et al. v. Jefferson Standard Life Ins. Co.,* 138 S. C., 208 136 S. E., 230. Mrs. Turner, the married daughter of the insured, who says that she received all mail addressed to her mother, testified that this letter was not received, and that she, acting for her mother and her father, the plaintiff, did not forward to the defendant any monthly premiums after June 19, 1931, because of the company's failure to return the premium receipt book. Whether or not this letter was received by the addressee presented an issue for the determination of the jury; it was likewise for the jury to say, under the evidence, whether or not the June monthly premium was received by the defendant.

It is a firmly established rule in this State that "punitive damages are not recoverable for a mere breach of contract. To recover damages of that character, the plaintiff must show that the breach was accomplished with a fraudulent intention, and was accompanied by a fraudulent act." *Williams v. Metropolitan Life Insurance Company,* 173 S. C., 448, 176 S. E., 340, 345; *Holland v. Spartanburg Herald-Journal Co.,* 166 S. C., 454, 165 S. E., 203, 84 A. L. R., 1336. The rule is also stated to be that acts of willfulness, accompanying the breach of a contract, unless there is fraud also, will not support a claim for punitive damages. *Holland v. Spartanburg Herald-Journal Co., supra.* It is also held that "a mere violation of a contract will not support an allegation of fraud." *Coleman v. Stevens,* 124 S. C., 8, 117 S. E., 305.

After a careful examination of the record, in the light of previous decisions, we are unable to conclude, as a matter of law, that the evidence in the case excludes all reasonable inference of fraud. *Bradley v. Washington Fidelity National Ins. Co.,* 170 S. C., 509, 171 S. E., 243; *Mack v. Life & Casualty Insurance Company of Ten-*

*nessee,* 171 S. C., 350, 172 S. E., 305. A jury will have to pass upon the conflicting evidence and the inferences growing thereout. The Court, of course, is not to be understood as intimating any opinion one way or the other on the weight of the evidence or the credibility of the witnesses.

The exceptions are sustained, and the case remanded for a new trial.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.