16126

KELLER v. PROVIDENT LIFE & ACCIDENT INS. CO.
(49 S. E. (2d) 577)

340

*Messrs. Haynsworth & Haynsworth,* of Greenville, *for Appellant,*

*Mr. John C. Henry,* of Greenville, *for Respondent,*

*Messrs. Haynsworth & Haynsworth,* of Greenville, *for Appellant,* on re-hearing,

_Mr. John C. Henry,_ of Greenville, _for Respondent,_ on re-hearing,

September 8, 1948.

OXNER, Justice.

On March 3, 1948, an opinion was filed affirming the judgment of the Court below. Appellant filed a petition for a rehearing, which was granted. This opinion will be substituted for the opinion heretofore filed.

On April 4, 1941, respondent, a resident of Greenville, South Carolina, who was then employed by the Southern Railway Company as a fireman and later promoted to the position of engineer, applied to appellant, Provident Life and Accident Insurance Company, for a policy of life, health and accident insurance. The application was executed at Greenville and witnessed by H. H. Robinson, the soliciting agent. It was stated therein that if approved and accepted by appellant at its home office in Chattanooga, Tennessee, the insurance was to become effective on May 1, 1941. At the same time respondent also signed and delivered to this agent an order, on a printed form prepared by appellant, directed to the paymaster of the Southern Railway Company, requesting his employer to deduct from his wages and pay to appellant each month, beginning with May, 1941, the sum of $6.10 to cover the premium on the policy to be issued. It was stipulated in this pay order that it was executed subject to the terms and conditions of the policy applied

for and was made a part of respondent's application for insurance. The deductions requested were regularly made by the Railway Company from May, 1941, through February, 1946, at which time respondent requested his employer to discontinue any further payments to appellant.

This suit was brought to recover the sum of $353.80, which represents the aggregate amount deducted from respondent's wages and remitted to appellant from May, 1941, through February, 1946. Respondent alleged in his complaint that after making the application heretofore mentioned, he was never notified whether it was accepted or rejected; that he never received a policy; that after hearing nothing from appellant for a long period of time, he concluded that his application had been rejected; and that notwithstanding the foregoing circumstances, appellant collected from his employer, without authority and without his knowledge or consent, the sum of $353.80, for which amount it was indebted to him "as money had and received", together with interest thereon from April 4, 1946. Appellant admitted in its answer receiving the payments sought to be recovered but denied any liability to respondent therefor, and alleged that, in accordance with the application, it duly issued a policy of insurance bearing date May 1, 1941, and mailed same to respondent on April 18, 1941. It was further alleged that said policy was in full force and effect from the date thereof until February, 1946, at which time respondent requested that no further deductions be made from his wages and the policy was cancelled.

The trial resulted in a verdict for respondent in the sum of $262.30, which represented the amount deducted from respondent's wages from May 1, 1941, through November, 1944. At the conclusion of the testimony, appellant made a motion for a directed verdict, which was overruled. Following the publication of the verdict, appellant moved for judgment *non obstante veredicto*. This motion was likewise refused. From the judgment entered on the verdict of the jury, ap-

pellant has appealed upon exceptions which challenge the correctness of the Court's rulings in refusing the motions mentioned.

The testimony offered at the trial will now be briefly summarized.

Respondent testified that he heard nothing from Appellant with respect to the acceptance or rejection of his application and, in fact, never received any communication whatsoever from appellant after the filing of the application until after five years later when this controversy arose. He testified that no insurance policy was ever received and this was corroborated by his wife who said that she was very much interested in the mail on account of having a son in the Navy and it was her daily custom to get it from the box on the porch of their residence. It is undisputed that no premium receipts were ever mailed or otherwise delivered to respondent. He stated that about thirty days after signing the application, he saw Robinson, the soliciting agent, in Greenville and told him he had not received the policy, to which Robinson replied that "he would write the Company", but he never saw Robinson again and received no communication from either him or the Company. Respondent further testified that after more than a year had passed and concluding that his application had been rejected, he obtained from another company on June 26, 1942, a health and accident policy. He said that he filed claims under this policy for illnesses suffered in September, 1942, and January, 1943, but that he filed no claims with appellant because he did not think he was insured by it.

During the latter part of January or early part of February, 1946, respondent noted a "big shortage" in his pay check and went to the local timekeeper of the railway company for an explanation and then learned, for the first time according to his testimony, that the Insurance Company had been collecting $6.10 monthly from his wages. The Railway Company called to his attention the fact that he had signed

an order about five years previously authorizing this deduction, which respondent says he had entirely forgotten. The timekeeper testified that he expressed great surprise upon learning that these deductions were being made. Respondent immediately requested the Railway Company to make no further payments and demanded that appellant return the amounts collected.

Prior to December, 1944, the employees of the Southern Railway Company were not furnished a statement of the deductions from their wages. They only received a check for the balance due without notation of any kind. However, beginning in December, 1944, and continuing monthly thereafter, the Company furnished its employees on a separate slip with each pay check a payroll deduction and earnings statement. Respondent's statements showed, along with other items, a deduction each month of $6.10 which was paid to appellant. It appears that the amount of his monthly or semi-monthly earnings varied, depending upon the class of service and the frequency and length of the trips made by him; and subject to various deductions, such as withholding tax and railroad retirement benefits. In fact, the payroll deduction statement listed ninety-seven separate items, but only a few of these affected respondent. The deductions noted on the slip are identified by code numbers. For instance, opposite the item of $6.10 appears the code number 19. Against this number on the back of the statement is the name of the appellant. Respondents testified that he assumed that the amount of his pay checks was correct. He was paid on the 15th and 30th day of each month. He stated that having concluded that his application had been rejected and having forgotten all about signing the pay order, it never occurred to him to examine the numerous items indicated by the code numbers on the back of the earnings statement.

The assistant manager of appellant's railroad department testified (by deposition) that respondent's application was received at the home office on April 7, 1941, and in accordance

therewith, a policy was issued and mailed to respondent on April 18, 1941. He stated that the envelope was duly stamped and directed to the address at Greenville, South Carolina, as given in the application and that the envelope bore a notice requiring its return to appellant at Chattanooga if not·delivered within five days, but it was never returned. Apparently this witness was not testifying from personal knowledge but from the records of the Company and the general routine usually followed in the office. Appellant introduced in evidence an alleged duplicate of the policy claimed to have been issued which purports to be countersigned by H..H. Robinson, "authorized agent". He was the same agent who solicited and witnessed the application.

Appellant's motion for a directed verdict was upon the ground that the testimony conclusively showed that during the period in controversy respondent was insured and the premiums collected earned and that respondent knew or should have known of the deductions complained of and is now estopped to deny such knowledge. The motion for judgment *non obstante veredicto* was made upon the ground that the verdict of the jury established the fact that respondent had knowledge of the situation commencing December, 1944, when the railroad initiated a system of sending monthly to each employee the payroll deductions and earnings statement. It is said that this precluded respondent on the theory of ratification, waiver and laches from any attempt to rescind the insurance contract or recoup any loss, because he made no effort to effectuate such rescission until February, 1946, more than fourteen months later. In support of the last motion, it is argued that there was a completed contract of insurance in 1941 and that in December, 1944, the time fixed by the jury when respondent knew or should have known that appellant was collecting premiums, respondent had the option of either ratifying the contract or disaffirming it, but if he chose to rescind, it was incumbent upon him to promptly do so. The suggestion is further made that the effect of the verdict of the jury was to permit partial rescission which

could not be allowed in view of the indivisible nature of the contract.

The questions raised are so interrelated that they will be considered together but before doing so, we wish to point out that they are based in part upon disputed facts and upon a construction of the complaint which we regard as unsound.

Appellant assumes as an undisputed fact that the policy was issued and mailed to respondent on April 18, 1941. If so, a rebuttable presumption arose that it was received by the addressee. The testimony of respondent and his wife that the policy was never received tended to rebut the presumption and presented a question of fact for determination by the jury as to whether the policy was ever received. *Burbage et al. v. Jefferson Standard Life Insurance Co.*, 138 S. C. 208, 136 S. E. 230; *Calder v. Commercial Casualty Insurance Co.*, 182 S. C. 240, 188 S. E. 864. This testimony further raised an issue of fact as to whether the policy was ever mailed. An addressee's testimony that he never received a letter is some evidence that it was never posted. *Glenn v. Western Union Telegraph Co.*, 84 S. C. 155, 65 S. E. 1024; *Calkins v. Vaughan*, 217 Ala. 56, 114 So. 570; *Texas Mutual Life Insurance Association v. Adams*, Tex. Civ. App. 77 S. W. (2d) 581; *Matlock v. Citizens' National Bank of Salmon*, 43 Idaho 214, 250 P. 648, 50 A. L. R. 1418. It follows that it was a disputed issue of fact in the case as to whether appellant ever issued or mailed this policy.

Appellant's counsel assert that this action is one for equitable rescission of a contract of insurance and devote the major portion of their briefs to a discussion of some of the essential elements necessary to sustain such a cause of action. We think they have misconceived the nature of respondent's cause of action. It is one for 'money had and received. The theory of respondent is, first, that there was never any completed contract of insurance and, second, that the conduct of

appellant was such as to reasonably lead him to believe that his application had been rejected, thereby estopping appellant to claim that respondent was liable for the premiums collected. Respondent must stand or fall on this cause of action.

We shall first determine whether, as appellant contends, the evidence conclusively established the fact that there was a completed contract of insurance.

An application for life insurance is a mere offer or proposal and until accepted, no contractual relationship exists between the applicant and the insurance company. The mere mailing and filing of such application can never be deemed an acceptance. "Something more is necessary to be shown, either an actual acceptance, or such circumstances as may imply acceptance, or estoppel from denying acceptance." *McGrath v. Piedmont Mutual Insurance Co.*, 74 S. C. 69, 54 S. E. 218, 220. "A mere intention or mental determination on the part of the insurer to accept the application is not of itself sufficient to effect a binding contract." 29 Am. Jur., page 155. "There must be some outward manifestation" of its assent. *Bowman et al. v. Northern Accident Co.*, 124 Mo. App. 477, 101 S. W. 691. Acceptance must be signified by some act from which the insurer cannot recede without liability. Upon the filing of an application, it is the duty of the insurer to act upon it with reasonable promptness and, in the meantime, to refrain from doing anything reasonably calculated to mislead the applicant,

Applying the foregoing principles to the instant case, we think the question of whether there was a completed contract of insurance between appellant and respondent presented an issue of fact for determination by the jury. There was no evidence that any endorsement of approval was ever made on respondent's application. The only evidence of acceptance is the testimony that the policy was issued and mailed to respondent. Of course, if this is true, the contract of insurance was consummated when the insurer unconditionally deposited the policy in the mail for

delivery to the applicant. *Williams v. Philadelphia Life Insurance Co.,* 105 S. C. 305, 89 S. E. 675. But the testimony of respondent and his wife to the effect that the policy was never received was alone sufficient to warrant a conclusion that it was never mailed. There are several other circumstances tending to support such a conclusion. Appellant did not produce a copy of any letter transmitting the policy. No premium receipts were ever issued. The alleged duplicate of the policy purports to be countersigned by Robinson. He was in Greenville when he solicited the application and when he had the conversation with respondent about a month later. Under what circumstances and where did he countersign it? Undoubtedly he could have thrown considerable light on the question of the issuance of the policy and perhaps was the only one connected with appellant who had a personal knowledge of the transaction. Yet he did not testify and there was nothing to show that he was not available as a witness. Appellant's failure to call him warrants the inference that his testimony, if it had been presented, would have been unfavorable to its contention. *Gaskins v. Firemen's Insurance Company,* 206 S. C. 213, 33 S. E. 2d 498.

It is true that the collection of the premiums might have estopped appellant from claiming that there was no acceptance of the application. But we are here dealing with the question of whether the testimony conclusively shows there was a completed contract so as to fix liability upon respondent for the payment of the premiums. "The fact that the company might be precluded, by waiver or estoppel, from denying its liability on the policy in case of loss does not always affect the right to demand the return of the premiums paid." 44 C. J. S.; Insurance, § 406, page 1390. Respondent bargained for a policy of insurance and not for some indefinite coverage resting on estoppel where he would be left in uncertainty and insecurity, with no safe evidence on which to rely.

The next question is whether appellant is estopped to claim that respondent was liable for the payment of the premiums collected. We think the evidence warranted the submission of this issue to the jury. No advance premium was required by the agent. Respondent signed the application and about thirty days later, having heard nothing further from the insurance company, saw the soliciting agent and informed him that the policy had not been received. If appellant's testimony is true, this agent had several weeks previously countersigned this policy, but he did not disclose this information to respondent. He merely stated that he would write the Company about the matter. Respondent heard nothing further from the agent or the Company. No premium receipts were ever forwarded. After about a year, concluding that his application had been rejected, respondent procured similar insurance elsewhere. There can be no serious doubt about his having been misled. He had several illnesses for which claims could have been filed under appellant's policy, but he filed none because he thought he was not covered. We think the circumstances were sufficient to support the inference that appellant's conduct was reasonably calculated to cause the belief entertained by respondent. It is well established that an "insurer's right to enforce insured's liability for premiums owing under an insurance policy may be lost by estoppel." 44 C. J. S., Insurance, § 357, page 1336.

We now turn to appellant's contention whereby the Company seeks to invoke an estoppel against respondent. It is asserted that the testimony conclusively shows that respondent knew, or in the exercise of ordinary diligence should have known, of the payments to appellant. It is true that an applicant for insurance may be estopped to deny liability for premiums for which he would not otherwise be liable. 44 C. J. S., Insurance, § 357, page 1337. But we think under all the circumstances shown to exist here that the question was one for submission to the jury. It was not

until December, 1944, that there was attached to respondent's check a payroll deduction and earnings statement. The local timekeeper of the railroad company testified that even after this system was put into effect, quite a few of the employees did not understand the method of settlement and from time to time called at his office for explanations. We need not determine whether the circumstances after December, 1944, were sufficient to conclusively establish constructive knowledge on the part of respondent. The jury did not allow recovery for this period and probably concluded that during this time respondent should have known of these deductions, although the evidence is rather convincing that he did not have actual knowledge until just before the policy was cancelled.

It follows from the foregoing conclusions that there was no error in refusing appellant's motion for a directed verdict. This being true, there was no error in refusing the motion for judgment *non obstante veredicto,* as ordinarily the refusal of such a motion brings up for review only the action of the trial court upon the appellant's motion for directed verdict made at the close of all the evidence. Assuming, without deciding, that on this motion appellant is entitled to the aid of any finding of fact by the jury, we think under the circumstances the motion was properly denied.

The jury was substantially charged to the effect that if the application was never accepted, there was no contract and respondent was entitled to a refund of all premiums paid; that if the application was accepted, a contract of insurance immediately became effective and respondent could not recover if appellant within a reasonable time thereafter notified him of such acceptance and furnished the policy, but if appellant failed to do so, respondent had a right to rescind the transaction and demand the return of the premiums paid, provided he acted within a reasonable time thereafter; and that if respondent knew or should have known of the deduc-

tion of the premiums and failed to rescind within a reasonable time, he would be deemed to have waived the right of rescission.

It will be observed that the Court's instructions were not altogether in accord with the views herein expressed. But we are not concerned on this appeal with the correctness of the charge.

The verdict indicates that the jury found there was no contract of insurance. Having so found, the jury under the Court's instructions should have returned a verdict for the full amount. The fact that it is less is favorable to appellant. The verdict cannot be explained on the basis of rescission. If, as appellant contends, the jury found that respondent knew or should have known of the deductions beginning in December, 1944, under the Court's instructions knowledge for this period of time would have precluded recovery on the theory of rescission because of undue delay in making any effort to rescind. It may be, although we do not undertake to decide, that either appellant or respondent would have been entitled to a new trial on the ground that the verdict was not responsive to the charge, but neither party on this appeal seeks a new trial on this ground. We may add that the verdict is not illogical under the principles we have announced because a jury could have denied recovery for premiums paid after December, 1944, on the theory of estoppel. Such an estoppel would not have been retroactive so as to preclude recovery of premiums collected prior to that time.

Judgment affirmed.

Fishburne, Stukes and Taylor, JJ., concur.

Baker, C. J., (dissenting) : I respectfully dissent from the prevailing opinion herein.

It seems altogether illogical to hold that the respondent is entitled to recover a portion of the premiums paid to the ap-

pellant for the policy of insurance for which he applied in April, 1941. The appellant is entitled either to a refund of all the premiums paid, upon the theory that the contract was not consummated, or is entitled to recover nothing because the contract was a completed transaction when, pursuant to the application filed by the respondent, the appellant commenced to collect premiums for the insurance.

When the respondent, in 1944, became aware of the fact that premiums were being deducted from his wages as an employee of Southern Railway Company, he may have had the right to disavow the contract and recover the amounts deducted from his salary for such insurance premiums. He did not have the legal right, as I view it, to validate the contract as of that date. He either had to accept the contract as of the date written and be responsible for the premiums during the whole period or disavow it upon the ground that he never received a policy, and there was no completed contract. Assuming that the contract was not consummated in 1941, it seems wholly unreasonable to conclude that the insured could consummate it in 1944 as a contract dating from that time. The appellant made no offer to contract with him as of that date. Its only obligation, if any, was to contract with him as of the date of the acceptance of his application.

The application provides that if accepted by the appellant it *"shall be effective on and after twelve o'clock noon the 1st day of May, 1941."* (Emphasis added.)

It cannot be doubted that if a claim on behalf of the respondent had arisen at any time during the period the appellant was collecting premiums, it could not have denied the existence of a contract.

The effect of the jury's finding is that a contract existed. If the contract existed it was indivisible and existed from the date of the commencement of the collection of premiums. The verdict of the jury was not responsive to or consistent with the charge of the Trial Judge. The jury was charged

that, if the application was accepted, and policy issued, the contract of insurance thereupon immediately went into force and effect, and that if it had never been accepted no contract existed, and the plaintiff would be entitled to a refund of all premiums he paid thereunder. He further charged that the respondent had a right to be notified of the acceptance or rejection and that if he was not notified or furnished a copy of the policy within a reasonable time, he had the right to withdraw from the contract and demand his premiums back. He did not charge that the respondent could reject in part and accept in part. He did charge that plaintiff had a reasonable time, after knowledge of the deduction, to reject the policy or to accept it, but, for reasons stated above, he could reject or accept effective May 1st, 1941, and not as of an arbitrary date chosen by him, or fixed by the jury.

In view of the foregoing, the motion of the appellant for judgment notwithstanding the verdict should have been granted.