**UNITED STATES of America, Appellant,**

v.

**STATE OF WASHINGTON, Gas and Oil Development Company, a Corporation, Union Oil Company of California, a Corporation, Grays Harbor County, Los Nietos Company, a Corporation, Tom Hawksworth and James E. Hill, Appellees.**

**No. 14715.**

United States Court of Appeals Ninth Circuit.

May 14, 1956.

Rehearing Denied June 15, 1956.

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Fred W. Smith, Attys., Dept. of Justice, Washington, D. C., Charles P. Moriarty, U. S. Atty., Seattle, Wash., for appellant.

Don Eastvold, Atty. Gen., Mitchell Doumit, Roy Fox, Asst. Attys. Gen., E. Albert Morrison, Tacoma, Wash., for appellee.

Before STEPHENS and POPE, Circuit Judges, and MATHES, District Judge.

MATHES, District Judge.

The Government appeals from a judgment dismissing "with prejudice", after trial, an action against the State of Washington and the other appellees to quiet the title to certain Washington real property claimed by the United States of America as trustee for certain Indian wards.

Jurisdiction was invoked under 28 U.S.C. § 1345, but the assertion of jurisdiction is challenged at the outset with the claim that, by virtue of sovereign immunity, the District Court had no jurisdiction over the person of the State of Washington.

The argument is that since the Constitution provides that: "In all Cases * * * in which a State shall be Party, the Supreme Court shall have original Jurisdiction", U.S.Const. art. III, § 2, cl. 2, it follows that: "For a State to be sued in any forum other than the United States Supreme Court it must consent thereto."

Since Ames v. Kansas, 1884, 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482, it has been held to be "within the power of congress to grant to the inferior courts of the United States jurisdiction in cases where the supreme court has been vested by the constitution with original jurisdiction." 111 U.S. at page 469, 4 S.Ct. at page 447; see: Case v. Bowles, 1946, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552; State of New York v. United States, 1946, 326 U.S. 572, 66 S.Ct. 310, 90 L.Ed. 326; United States v. State of Montana, 9 Cir., 134 F.2d 194, 196, certiorari denied, 1943, 319 U.S. 772, 63 S.Ct. 1438, 87 L.Ed. 1720; Hart and Wechsler, The Federal Courts and The Federal System 228 (1953).

Section 1251(b) (2) of revised Title 28 of the United States Code provides that: "The Supreme Court shall have original but not exclusive jurisdiction of: * * * All controversies between the United States and a State * * *."

And 28 U.S.C. § 1345 declares that: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States * * *."

The suit at bar to quiet title in the Government in trust for certain Indian wards is clearly an action "commenced by the United States" within the

meaning of § 1345. Cf. United States v. Minnesota, 1926, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539. Accordingly the District Court correctly assumed jurisdiction over the person of the State of Washington. United States v. California, 1936, 297 U.S. 175, 187–189, 56 S.Ct. 421, 80 L.Ed. 567.

It is alleged in the complaint that prior to 1858 the land in question was ceded to the United States by treaty with the Indians; that thereafter a Government survey of the land was made and this survey showed the west boundary line of the land to be "the high water mark of the Pacific Ocean."

The complaint continues: "That one Samson Johns, a member of the Quinaielt Tribe of Indians, settled upon lots 3 and 4, * * * about the year 1880, said lots at that time being a part of the public domain of the United States and subject to entry by Indians and members of the Indian tribes under and pursuant to the homestead laws of the United States; that he made final proof by an affidavit dated May 30, 1889; that on September 7, 1900, the Secretary of the Interior erroneously issued to him a fee simple patent covering the land pursuant to the provisions of the Act of May 20, 1862 (12 Stat. 392) * * *"

It is next alleged that "the Secretary of Interior in 1916 cancelled the fee simple patent theretofore issued to Samson Johns and issued to him in lieu thereof a trust patent for said lots 3 and 4, * * * under the provisions of the Act of Congress of July 4, 1884 (23 Stat. 96); that the trust patent so issued provided, in conformity with the 1884 Act, that the land would be held in trust by the United States for a period of 25 years which trust period has from time to time been extended by Executive Orders for additional periods of 25 years each; and that said trust * * * is now in effect and will not expire until the year 1966."

It is further alleged: "That since said Samson Johns went into possession of said * * * real property which is bounded on the west by the Pacific Ocean, there has been added thereto by the action of the Pacific Ocean approximately sixty acres of new land * * * commonly known as the accreted land, which has become attached to and is in fact a part of said Lots 3 and 4 * * *"

The complaint concludes with the allegations: "That said Samson Johns with his family, and since his death in 1930, his children and heirs * * * have at all times since 1880 continuously occupied and do now occupy and reside on said real property." Further: that appellees "claim some right, title or interest in and to the accreted land attached to said Lots 3 and 4"; that certain of appellees "have drilled * * * oil and gas wells" on the accreted land "under a claim of right alleged to have been obtained from the State of Washington" by virtue of certain "leases, permits or other instruments" which "the State * * * was without legal authority to enter into or make * * *"

The State of Washington answered asserting ownership of the accreted lands and alleging *inter alia* that the United States is "not a real party in interest", and: "That the fee patent issued to Samson Johns pursuant to the General Homestead Laws of the United States on September 7, 1900, was and is valid and * * * any purported acts by the Secretary of the Interior to cancel and annul the same are void and of no effect * * * and that if said patent was not properly issued under the General Homestead Laws the same was properly issued under the Act of March 3, 1875 (43 U.S. C.A. Sec. 189) which act would provide a trust of five years' duration which trust period has long since expired."

The District Court ordered the cause referred to a Master "to hear, determine, and examine all evidence and legal authorities touching the issues * * *" Fed.R.Civ.Proc. Rule 53, 28 U.S.C.A. The Master reported the facts to be substantially as alleged by the Government, and concluded: that "the fee patent of 1900 was superseded by the trust patent issued in 1916"; that the

Government had capacity to sue; and that: "The owner of the accreted lands is the United States of America in trust for the Indian heirs * * *"

Objections to the report were filed, and the matter was then referred back to the Master for consideration of the objections and "any additional points of law raised in briefs, and for review and report thereon." The Master then made further report, and the District Court adopted the Master's findings "as corrected and supplemented."

The District Court found further that: "The fee patent of 1900 was regular on its face and was issued in accordance with the homestead application of Samson Johns which application was made under the General Homestead Laws of the United States of 1862. Under such patent the land was not held in trust."

From this finding the learned District Judge concluded that "the defect in plaintiff's capacity to sue is shown by plaintiff's own pleading and proof * * *" and accordingly dismissed the action. See United States v. Gas & Oil Dev. Co., D.C.W.D.Wash.1954, 126 F. Supp. 840, 844.

Section 1 of the General Homestead Act of May 20, 1862 expressly limited the benefits of the statute to every person "who * * * is a citizen of the United States, or who shall have filed his declaration of intention to become such, as required by the naturalization laws * * *." 12 Stat. 392 (1862).

The 1900 patent in question was issued over the signature of President William McKinley "pursuant to the Act of Congress approved 20th May, 1862, 'To secure Homesteads to Actual Settlers on the Public Domain', and the acts supplemental thereto * * *"

First of "the acts supplemental thereto" was the Act of March 3, 1875, 18 Stat. 402, which extended the benefits of the Homestead Act of 1862 to certain Indians, namely, to "any Indian born in the United States, who is the head of a family, or who has arrived at the age of twenty-one years, and who has abandoned * * * his tribal relations." 18 Stat. 420, § 15 (1875), 43 U.S.C.A. § 189.

Next of "the acts supplemental thereto" was the Act of July 4, 1884, 23 Stat. 76, § 1 of which provided: "That such Indians as may now be located on public lands, or as may, under the direction of the Secretary of the Interior, or otherwise, hereafter, so locate may avail themselves of the provisions of the homestead laws as fully and to the same extent as may now be done by citizens of the United States * * * but no fees or commissions shall be charged on account of said entries or proofs. All patents therefor shall be of the legal effect, and declare that the United States does and will hold the land thus entered for the period of twenty-five years, in trust for the sole use and benefit of the Indian by whom such entry shall have been made, or, in case of his decease, of his widow and heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his widow and heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever." 23 Stat. 96 (1884), 43 U.S.C.A. § 190.

Third of "the acts supplemental" to the Homestead Act of 1862 was the Act of February 8, 1887, which provided that "every Indian born within the territorial limits of the United States who has voluntarily taken up within said limits his residence, separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges, and immunities of such citizens * * *." 24 Stat. 388, 390 (1887), 8 U.S.C.A. note 81 following § 1401.

It is clear from the language of the Homestead Act of 1862 that before Samson Johns could have qualified under that Act for issuance of a patent to the 80 acre tract involved here, it would have been necessary for him to make proof: (1) that he was a citizen of the United

States, and (2) that he had paid the fees required by law. [See: 12 Stat. 392, § 1 (1862); id. 393, § 6.]

· And it is equally clear that before Samson Johns could have qualified for a five-year trust patent under the Act of March 3, 1875, it would have been necessary for him to make proof: (1) that he was an "Indian born in the United States, who is the head of a family * * * and who has abandoned * * * his tribal relations * * * ", and (2) that he had paid the fees required by law. [See: 18 Stat. 420 (1875); 12 Stat. 393, § 6 (1862).] ·

But in order to qualify for the trust patent provided under the Act of July 4, 1884, it was not necessary to prove either (1) that he was a citizen, or (2) that he had abandoned his tribal relations, or (3) that he had paid any fees. For the 1884 statute opened the public domain to entry for homestead by all "Indians * * * located on public lands * * * ", and provided that "no fees or commissions shall be charged on account of said entries or proofs." [See 23 Stat. 96 (1884), 43 U.S.C.A. § 190.]

In his "Homestead Proof-Testimony of Claimant" executed August 11, 1899, Samson Johns swore that he was an Indian, born in the State of Washington, and the head of a family, and that he had "severed all * * * tribal relations." The Master found as a fact that "Samson Johns was an enrolled Indian of the Quinaielt Tribe during his lifetime", and reported as his "conclusion of law" that "Samson Johns did not sever his tribal relations with the Quinaielt Tribe of Indians."

It does not appear in the record before us that the learned District Judge made any finding at all as to whether or not Johns, at the time in question, had severed or "abandoned * * * his tribal relations", within the meaning of the 1875 Act, 18 Stat. 420, 43 U.S.C.A. § 189, or had become a citizen of the United States under the above-quoted provisions of the Act of February 8, 1887. 24 Stat. 388, 390 (1887).

■ But even assuming *arguendo* that Johns had become a citizen under the 1887 Act, the finding of the trial court that the "fee patent of 1900 was * * * issued * * * under the General Homestead Laws * * * of 1862 * * * [and] under such patent the land was not held in trust", must nonetheless be held "clearly erroneous." Fed.R.Civ. Proc. Rule 52(a), 28 U.S.C.A.

■ Absent evidence to the contrary, the applicable presumption is that the ordinary course of business was followed and that the law was obeyed; also that official duty was regularly and faithfully performed. United States v. Crusell, 1871, 14 Wall. 1, 4, 81 U.S. 1, 20 L.Ed. 821; President, Directors & Co. of United States Bank v. Dandridge, 1827, 12 Wheat. *64 *69, 25 U.S. 64, 6 L.Ed. 552; Cavness v. United States, 9 Cir., 187 F. 2d 719, 723, certiorari denied 1951, 341 U.S. 951, 71 S.Ct. 1019, 95 L.Ed. 1374.

Here the uncontradicted evidence in the form of two official receipts discloses that "no fees or commissions" were exacted from "Samson Johns (an Indian)." As stated above, before any patent granting fee simple title could lawfully have issued under the 1862 Act, the statutory fees were required to be paid. [See: 12 Stat. 392, § 1 (1862); id. 393, § 6.]

Assuming then that Johns had acquired the status of a citizen of the United States under the Act of 1887, a fee patent could not lawfully have issued without payment of the statutory charges. Cf. United States v. Krause, D.C.W. D.La.1950, 92 F.Supp. 756, 760.

The same is true with respect to any patent under the 1875 Act; for even assuming that Johns had "abandoned * * * his tribal relations", a five-year trust patent could not lawfully have issued under the 1875 Act without payment of the statutory fees. [See: 18 Stat. 420 (1875), 43 U.S.C.A. § 189; 12 Stat. 392, § 1 (1862); id. 393, § 6; cf. 43 U.S.C. § 179.]

It necessarily follows that only under the 1884 Act—requiring no proof of American citizenship, or of abandonment

of tribal relations, and declaring that "no fees or commissions shall be charged"— could a patent for the land in question lawfully have issued to Samson Johns.

And by the same token, only with the 25-year-trust-provision as required by law, 43 U.S.C.A. § 190, could any valid patent have issued to Johns. The 1900 fee patent must then either be read as containing the trust provision required by the 1884 statute, or be considered a nullity.

■ As said in United States v. Stone, 1864, 2 Wall. 525, 69 U.S. 525, 17 L.Ed. 765: "The patent is but evidence of a grant, and the officer who issues it acts ministerially and not judicially. If he issues a patent for land reserved from sale by law, such patent is void for want of authority." 69 U.S. at page 535.

■ It is true of course, in "a case in which the officers of the department have acted within the scope of their authority", Moore v. Robbins, 1877, 96 U.S. 530, 532, 24 L.Ed. 848, a patent once issued passes beyond the control of the executive branch of the Government. Bicknell v. Comstock, 1885, 113 U.S. 149, 5 S. Ct. 399, 28 L.Ed. 962; United States v. Schurz, 1880, 102 U.S. 378, 26 L.Ed. 167. But here the officers acted, not only without authority, but contrary to the plain mandate of the statute, in issuing the 1900 patent without the requisite trust provision. Cf. Germania Iron Co. v. United States, 1897, 165 U.S. 379, 17 S. Ct. 337, 41 L.Ed. 754.

■ And since the agent of the Government who issued the 1900 patent "was obviously without authority to dispose of the lands" to the fee title, the Government cannot be held estopped "from asserting rights of the United States in its mineral rights which he could not surrender." State of Utah v. United States, 1932, 284 U.S. 534, 545–546, 52 S.Ct. 232, 76 L.Ed. 469.

■ For it is settled that "the United States is neither bound nor estopped by acts of its officers or agents * * * to do or cause to be done what the law

does not sanction or permit." Utah Power & Light Co. v. United States, 1917, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791.

■ Accordingly we hold that the 1900 patent must be read as containing the 25-year-trust-provision required by the 1884 Act; and that the patent issued February 5, 1916, "in lieu of the one dated September 7, 1900" is valid. United States v. Joyce, 8 Cir., 1917, 240 F. 610, 615; Eells v. Ross, 9 Cir., 1894, 64 F. 417, 420.

■ As the learned District Judge found, the trust period of the 1916 patent has been extended until 1966. 25 U.S.C.A. § 391; United States v. Jackson, 1930, 280 U.S. 183, 50 S.Ct. 143, 74 L.Ed. 361. The Government is therefore "the real party in interest" in prosecuting this action to quiet the title to the land in question for the benefit of the Indian wards, the heirs of Samson Johns. Fed.R.Civ.Proc. Rule 17(a), 28 U.S.C.A.; United States v. Minnesota, supra, 270 U.S. at pages 193–194, 46 S.Ct. 298; cf. Cramer v. United States, 1923, 261 U.S. 219, 232, 43 S.Ct. 342, 67 L.Ed. 622; Heckman v. United States, 1912, 224 U.S. 413, 444–445, 32 S.Ct. 424, 56 L.Ed. 820.

The Government urged in the trial court that the findings and decree of the District Court annulling a claimed 1897 tax lien on the land are res judicata, and so determinative of the issue as to the title of the United States. That decree was rendered in a suit brought by the United States against the County of Chehalis, Washington, the County Treasurer, the County Assessor, and the Board of County Commissioners.

The specific contention is that the State is privy to that judgment, and so estopped to deny the title of the United States. The conclusions we have reached render it unnecessary to express an opinion on the question. See: State v. Pacific Tel. & Tel. Co., 1943, 9 Wash.2d 11, 113 P.2d 542; Ewald's Ex'r and Trustee v. Louisville, 1921, 192 Ky. 279, 232 S. W. 388; People ex rel. Bryant v. Holladay, 1892, 93 Cal. 241, 29 P. 54.

Nor do we reach on this record the question as to ownership of the accreted land. See: United States v. Gas & Oil Dev. Co., supra, 126 F.Supp. at pages 844–845; cf. Mann v. Tacoma Land Company, 1894, 153 U.S. 273, 14 S.Ct. 820, 38 L.Ed. 714.

The findings and judgment are vacated and the cause remanded for further proceedings consistent with this opinion.