Edouard LEGILLE et al.

v.

C. Marshall DANN, Commissioner of
Patents, Appellant.

No. 74–1641.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 20, 1975.

Decided Aug. 24, 1976.

Jere W. Sears, Atty., Washington, D.C.., with whom Joseph F. Nakamura, Sol., Washington, D.C., was on the brief, for appellant.

David S. Fishman, of the bar of the Supreme Court of Connecticut, pro hac vice, by special leave of court, with whom Charles L. Fishman, Washington, D.C., was on the brief, for appellees.

Before FAHY, Senior Circuit Judge, and TAMM and ROBINSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBINSON.

Dissenting opinion filed by Senior Circuit Judge FAHY.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

An application for a United States patent filed within twelve months after filing of an application for a foreign patent on the same invention is statutorily accorded the filing date of the foreign application and the effect thereof.[1] If, however, the inter-

---

1. "An application for patent for an invention filed in this country by any person who has, or whose legal representatives or assigns have, previously regularly filed an application for a patent for the same invention in a foreign coun- try which affords similar privileges in the case of applications filed in the United States or to citizens of the United States, shall have the same effect as the same application would have if filed in this country on the date on which the

val between the filings exceeds twelve months, patent protection in the United States may not be available.[2] The practice of the Patent Office, unchallenged in this litigation, is to file the duplicating United States application upon receipt.[3]

This appeal, by the Commissioner of Patents, brings to this court a controversy as to the filing date properly to be given four applications domestically mailed to the Patent Office in time for normal delivery before expiration of the twelve-month period but allegedly received thereafter. On cross-motions for summary judgment, the District Court, utilizing the familiar presumption of regularity of the mails, ruled in favor of the applicants.[4] Our examination of the record, however, discloses potential evidence capable of dispelling the presumption and generating an issue of fact as to the date on which the applications arrived. We accordingly reverse the judgment and remand the case for trial.

## I

From affidavits submitted in support of the motions for summary judgment , we reconstruct the facts apparently undisputed. On March 1, 1973, appellees' attorney mailed from East Hartford, Connecticut, to the Patent Office in Washington, D. C., a package containing four patent applications.[5] Each of the applications had previously been filed in the Grand Duchy of Luxembourg, three on March 6, 1972, and the fourth on the following August 11.[6] The package was marked "Airmail," bore sufficient airmail postage and was properly addressed. Delivery of air mail from East Hartford to Washington at that time was normally two days.[7]

The applications were date-stamped "March 8, 1973," by the Patent Office.[8] Each of the four applications was assigned that filing date on the ground that the stamped date was the date of receipt by the Patent Office.[9] If the action of the Patent Office is to stand, three of appellees' applications, on which Luxembourg patents had been granted, fail in this country.[10]

---

application for patent for the same invention was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed; but no patent shall be granted on any application for patent for an invention which had been patented or described in a printed publication in any country more than one year before the date of the actual filing of the application in this country, or which had been in public use or on sale in this country more than one year prior to such filing. . . ." 35 U.S.C. § 119 (1970).

2. "A person shall be entitled to a patent unless— . . . (d) the invention was first patented or caused to be patented, or was the subject of an inventor's certificate, by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application for patent or inventor's certificate filed more than twelve months before the filing of the application in the United States . . .." 35 U.S.C. § 102 (1970).

3. 37 C.F.R. § 1.6(a) (1975). We are not informed of the legal basis for this procedure, and consequently are unsure as to whether it could be modified by the Commissioner. But see *United States v. Lombardo,* 241 U.S. 73, 76–77, 36 S.Ct. 508, 509, 60 L.Ed. 897, 898 (1916); *Investors Funding Corp. v. Jones,* 161

U.S.App.D.C. 420, 422–423, 495 F.2d 1000, 1002–1003 (1974); *Stebbins' Estate v. Helvering,* 74 App.D.C. 21, 23, 121 F.2d 892, 894 (1941). Compare *McCord v. Commissioner,* 74 App.D.C. 369, 123 F.2d 164 (1941).

4. *Legille v. Tegtmeyer,* 382 F.Supp. 166 (D.D.C. 1974).

5. The applications were placed in individual envelopes and the four envelopes were then wrapped as a single mailing package.

6. See note 10 *infra.*

7. An affidavit by the postmaster whose district includes East Hartford states that items sent by airmail therefrom on March 1, 1973, should have been received in Washington on March 3, and certainly before March 6, and that the affiant knew of no reason why such items were not received until March 8.

8. So also were preaddressed postcards enclosed for acknowledgment of receipt of the applications.

9. See text *infra* at notes 40–48.

10. See notes 1–2 *supra.* One application—that filed in Luxembourg on August 11, 1972, and in the Patent Office on March 8, 1973—was in any event timely. See notes 1–2 *supra.*

Appellees petitioned the Commissioner of Patents to reassign the filing date. The petition was denied.[11] Appellees then sued in the District Court for a judgment directing the Commissioner to accord the applications a filing date not later than March 6, 1973. Both sides moved for summary judgment on the basis of the pleadings and affidavits respectively submitted. Not surprisingly, none of the affidavits reflected any direct evidence of the date on which the applications were actually delivered to the Patent Office.[12]

The District Court correctly identified the central issue: "whether there exists a genuine issue of fact as to when these applications were received by the Patent Office." [13] By the court's appraisal, appellees' suit was "predicated upon the legal presumption that postal employees discharge their duties in a proper manner and that properly addressed, stamped and deposited mail is presumed to reach the addressee in due course and without unusual delay, unless evidence to the contrary is proven." [14] The court believed, however, that the Commissioner's position rested "primarily upon a presumption of procedural regularity based upon the normal manner, custom, practice and habit established for the handling of incoming mail at the Patent Office and upon the absence of evidence showing that the subject applications were not handled routinely in accordance with those established procedures." [15] On this analysis, the court "concluded that the presumption relied upon by the [Commissioner] is insufficient to overcome the strong presumption that mails,

properly addressed, having fully prepaid postage, and deposited in the proper receptacles, will be received by the addressee in the ordinary course of the mails." [16] "This latter presumption," the court held, "can only be rebutted by proof of specific facts and not by invoking another presumption"; [17] "the negative evidence in this case detailing the manner, custom, practice and habit of handling incoming mail by the Patent Office fails to overcome or rebut the strong presumption that the applications were timely delivered in the regular course of the mails to the Patent Office." [18] In sum,

[appellees] rely upon the strong presumption of the regularity of the mails to show that, in the normal course of postal business, these applications would be delivered within two days from March 1, 1973. [The Commissioner] does not show nor offer to show by way of any positive evidence that the presumption is inapplicable in this case. On the contrary, he relies on negative evidence as to custom, habit and usual procedure to create a conflicting presumption that the agency's business and procedure were followed in this case. Under the circumstances of this case, this Court holds, as a matter of law, that this presumption is insufficient to rebut or overcome the presumption of the regularity of the mails.[19]

## II

 Proof that mail matter is properly addressed, stamped and deposited in an appropriate receptacle has long been accepted

11. Edouard Legille, 182 U.S.P.Q. 102 (1973).

12. The affidavits yield nothing to indicate disruption of the normal mail-delivery process on the date in question, or any apparent reason why appellees' applications could have been delayed in the mails, nor do they suggest any breakdown in standard Patent Office practices with respect to incoming mail. The affidavits may reflect all of the evidence they respectively could muster at a trial but, we hasten to add, each side will be free to introduce any additional evidence relevant to the issues. In either event, our decision remains the same.

13. *Legille v. Tegtmeyer, supra* note 4, 382 F.Supp. at 171. See Fed.R.Civ.P. 56(c).

14. *Legille v. Tegtmeyer, supra* note 4, 382 F.Supp. at 168.

15. *Id.* at 169.

16. *Id.*

17. *Id.*

18. *Id.* at 170.

19. *Id.* at 171.

as evidence of delivery to the addressee.[20] On proof of the foundation facts, innumerable cases recognize a presumption to that effect.[21] Some presume more specifically that the delivery occurred in due course of the mails.[22] The cases concede, however, that the presumption is rebuttable.[23] We think the District Court erred in adhering to the presumption in the face of the evidentiary showing which the Commissioner was prepared to make.

 Rebuttable presumptions[24] are rules of law attaching to proven evidentiary facts certain procedural consequences as to the opponent's duty to come forward with other evidence.[25] In the instant case, the presumption would normally mean no more than that proof of proper airmailing of appellees' applications required a finding, in the absence of countervailing evidence, that they arrived at the Patent Office within the usual delivery time.[26] There is abundant authority undergirding the proposition that, as a presumption, it did not remain viable in the face of antithetical evidence.[27] As Dean Wigmore has explained, "the peculiar effect of a presumption 'of law'[28] (that is, the real presumption) is merely to invoke a rule of law compelling the [trier of fact] to reach a conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and

20. *Dunlop v. United States,* 165 U.S. 486, 494–495, 17 S.Ct. 375, 377–378, 41 L.Ed. 799, 802 (1897); *Atherton v. Atherton,* 181 U.S. 155, 171, 21 S.Ct. 544, 550, 45 L.Ed. 794, 803 (1901); *Proctor v. Ray,* 194 Ky. 746, 240 S.W. 1063, 1065 (1922); *Fleming v. Doodlesack,* 270 Mass. 271, 169 N.E. 795, 796–797 (1930). See generally 1 J. Wigmore, Evidence § 95 at 524 (3d ed. 1940).

21. *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 419, 76 L.Ed. 861, 864 (1932); *Henderson v. Carbondale Coal & Coke Co.,* 140 U.S. 25, 36–37, 11 S.Ct. 691, 695, 35 L.Ed. 332, 337 (1891); *Rosenthal v. Walker,* 111 U.S. 185, 193, 4 S.Ct. 382, 386, 28 L.Ed. 395, 398 (1884); *Crude Oil Corp. v. Commissioner,* 161 F.2d 809, 810 (10th Cir. 1947). See also the numerous cases collected at 1 J. Wigmore, Evidence § 95 at 524–525 n. 1 (3d ed. 1940).

22. *Hagner v. United States, supra* note 21, 285 U.S. at 430, 52 S.Ct. at 419, 76 L.Ed. at 864; *Rosenthal v. Walker, supra* note 21, 111 U.S. at 193, 4 S.Ct. at 386, 28 L.Ed. at 398; *Gallaway v. Schied,* 73 Ill.App.2d 116, 219 N.E.2d 718, 722 (1966); *Border v. Grooms,* 267 Md. 100, 297 A.2d 81, 83 (1972). See also *John W. Johnson, Inc. v. Basic Constr. Co.,* 139 U.S. App.D.C. 85, 94 n. 20, 429 F.2d 764, 773 n. 20 (1970).

23. *Henderson v. Carbondale Coal & Coke Co., supra* note 21, 140 U.S. at 36–37, 11 S.Ct. at 645, 35 L.Ed. at 337; *Rosenthal v. Walker, supra* note 21, 111 U.S. at 193–194, 4 S.Ct. at 386, 28 L.Ed. at 398; *Alger v. Community Amusements Corp.,* 320 Ill.App. 184, 50 N.E.2d 594, 597 (1943); *Keller v. Provident Life & Accident Ins. Co.,* 213 S.C. 339, 49 S.E.2d 577, 581 (1948); *Employers' Nat'l Life Ins. Co. v.*

*Willits,* 436 S.W.2d 918, 921 (Tex.Civ.App. 1969); *Manassas Park Dev. Co. v. Offutt,* 203 Va. 382, 124 S.E.2d 29, 31 (1962).

24. We distinguish the presumption "of law"— the procedural rule dictating a factual conclusion in the absence of contrary evidence—from the presumption "of fact," which in reality is not a presumption at all, see 9 J. Wigmore, Evidence § 2491 at 288–289 (3d ed. 1940), and from the "conclusive" presumption, which is actually a substantive rule of law. See 9 J. Wigmore, Evidence § 2492 (3d ed. 1940); C. McCormick, Evidence § 342 at 804 (2d ed. 1972). We also differentiate presumptions from inferences, a dissimilarity which "is subtle, but not unreal. A presumption, sometimes called a presumption of law, is an inference which the law directs the [trier of fact] to draw if it finds a given set of facts; an inference is a conclusion which the [trier of fact] is *permitted,* but not compelled, to draw from the facts." *Bray v. United States,* 113 U.S.App.D.C. 136, 140, 306 F.2d 743, 747 (1962) (emphasis in original). See also *Pendergrast v. United States,* 135 U.S.App.D.C. 20, 32 n.72, 416 F.2d 776, 788 n.72, *cert. denied,* 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969).

25. 9 J. Wigmore, Evidence §§ 2490–2491 (3d ed. 1940); C. McCormick, Evidence § 342 (2d ed. 1972).

26. See cases cited *supra* notes 21–23.

27. 9 J. Wigmore, Evidence §§ 2491, 2519 (3d ed. 1940). See also cases cited *supra* note 23 and authorities cited *infra* notes 34–37.

28. See note 24 *supra.*

the case is in the [factfinder's] hands free from any rule."[29] As more poetically the explanation has been put, "[p]resumptions . . . may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts."[30]

We are aware of the fact that this view of presumptions—the so-called "bursting bubble" theory[31]—has not won universal acclaim.[32] Nonetheless, it is the prevailing view, to which jurists preponderantly have subscribed;[33] it is the view of the Supreme Court,[34] and of this court as well.[35]

**29.** 9 J. Wigmore, Evidence § 2491 at 289 (3d ed. 1940).

**30.** *Stumpf v. Montgomery,* 101 Okl. 257, 226 P. 65, 69, 32 A.L.R. 1490 (1924), quoting *Mackowik v. Kansas City, St. J. & C.B.R.R.,* 196 Mo. 550, 94 S.W. 256, 262 (1906).

**31.** See, *e. g.,* C. McCormick, Evidence § 345 at 821–826 (2d ed. 1972).

**32.** See, *e. g.,* Morgan & McGuire, *Looking Backward and Forward at Evidence,* 50 Harv.L. Rev. 909, 913 (1937); Morgan, *Instructing the Jury Upon Presumptions and Burden of Proof,* 47 Harv.L.Rev. 59, 82–83 (1933); Gausewitz, *Presumptions in a One-Rule World,* 5 Vand.L. Rev. 324 (1952). *Contra,* Laughlin, *In Support of the Thayer Theory of Presumptions,* 52 Mich.L.Rev. 195 (1953). See also the discussion in C. McCormick, Evidence § 345 at 821–829 (2d ed. 1972).

**33.** See cases cited *supra* note 23 and additional cases collected at 9 J. Wigmore, Evidence §§ 2419 at 290–292 n.6, 2519 at 431–432 n.2 (3d ed. 1940), Supp.1975 at 102–108, 197–198.

**34.** *New York Life Ins. Co. v. Gamer,* 303 U.S. 161, 170, 171, 58 S.Ct. 500, 503, 82 L.Ed. 726, 730, 731 (1938) (presumption of death by accident rather than by suicide "is not evidence and *ceases* upon the introduction of substantial proof to the contrary. . . . The presumption is not evidence and may not be given weight as evidence."); *Del Vecchio v. Bowers,* 296 U.S. 280, 286–287, 56 S.Ct. 190, 193, 80 L.Ed. 229, 233 (1935) (as to statute presuming, in absence of contrary evidence, that injury to employee was not occasioned by wilful intention to injure or kill himself, "[o]nce the employer has carried his burden by offering testimony sufficient to justify a finding of suicide, the presumption falls out of the case. It never had and cannot acquire the attribute of evidence in the claimant's favor [footnote omitted]. Its only office is to control the result where there is an entire lack of competent evidence. If the employer alone adduces evidence which tends to support the theory of suicide, the case must be decided upon that evidence. Where the claimant offers substantial evidence in opposition, . . . the issue must be resolved upon the whole body of proof pro and con [footnote omitted] . . . ."); *Mobile J. & K. C. R.R. v. Turnipseed,* 219 U.S. 35, 42, 43, 31 S.Ct. 136, 137, 55 L.Ed. 78, 80

(1910) (effect of state statute, providing that proof of injury inflicted by operation of locomotives or cars by railroad shall be "*prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury," was "to provide that evidence of an injury arising from the actual operation of trains shall create an inference of negligence . . . . The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done the inference is at an end, and the question of negligence is one for the jury upon all of the evidence."); *Lincoln v. French,* 105 U.S. 614, 617, 26 L.Ed. 1189, 1190 (1881) ("[p]resumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear.") See also *Western & A. R.R. v. Henderson,* 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884 (1929).

**35.** *Harlem Taxicab Ass'n v. Nemesh,* 89 U.S. App.D.C. 123, 124, 191 F.2d 459, 461 (1951) ("[a]n association's name and insignia raise a presumption that it owns or controls a cab on which they appear, but this is decisive only in the absence of contrary evidence [citations omitted]. . . . When substantial evidence contrary to a presumption is introduced, the underlying facts that originally raised the presumption may or may not retain some degree of probative force as evidence but they no longer have any artificial or technical force; in other words, 'the presumption falls out of the case . . . .'" [quoting *Del Vecchio v. Bowers, supra* note 34, 296 U.S. at 286, 56 S.Ct. at 193, 80 L.Ed. at 233]); *Stone v. Stone,* 78 U.S. App.D.C. 5, 7, 136 F.2d 761, 763 (1943) ("[i]n an action which challenges the conduct of a public officer, a presumption of law is indulged in his favor that his official duties were properly performed. Like other such presumptions, it disappears as soon as substantial countervailing evidence is introduced [footnote omitted]."); *Rosenberg v. Murray,* 73 App.D.C. 67, 68, 116 F.2d 552, 553 (1940) (statutory presumption that vehicle was driven with owner's consent "continues until there is credible evidence to the contrary, and ceases when there is uncontradicted proof that the automobile was not at the time being used with the owner's permission.").

It is also the approach taken by the Model Code of Evidence [36] and, very importantly, by the newly-adopted Federal Rules of Evidence.[37] These considerations hardly leave us free to assume a contrary position. Beyond that, we perceive no legal or practical justification for preferring either of the two involved presumptions [38] over the other.[39] In light of the Commissioner's showing on the motions for summary judgment, then, we conclude that the District Court should have declined a summary disposition in favor of a trial.

### III

Conservatively estimated, the Patent Office receives through the mails an average of at least 100,000 items per month [40] The procedures utilized for the handling of that volume of mail were meticulously described in an affidavit by an official of the Patent Office, whose principal duties included superintendence of incoming mail.[41] Ordi-

**36.** American Law Institute, Model Code of Evidence, Rule 704(2) (1942).

**37.** "In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast." Fed. R. Evid. 301. The history of this provision portrays a fluctuating evolution. As originally proposed by the Supreme Court, the presumptions governed were given the effect of placing on the opposing party the burden of establishing the nonexistence of the presumed fact, and "[t]he so-called 'bursting bubble' theory, under which a presumption vanishes upon the introduction of evidence which would support a finding of the nonexistence of the presumed fact, even though not believed, [was] rejected as according presumptions too 'slight and evanescent' an effect." Advisory Committee's Note to original Rule 301. The House Committee on the Judiciary agreed, but substituted a shift in the burden of going forward in place of a shift of the burden of proof, and conferred evidentiary value on the presumption. H.R. Rep. No. 93–650, 93d Cong., 1st Sess. 7 (1973), U.S.Code Cong. & Admin. News 1974, p. 7075. The Senate Committee on the Judiciary felt, however, that "the House amendment is ill-advised. . . . 'Presumptions are not evidence, but ways of dealing with evidence.' [footnote omitted]. This treatment requires juries to perform the task of considering 'as evidence' facts upon which they have no direct evidence and may confuse them in performance of their duties." S. Rep. No. 93–1277, 93d Cong., 2d Sess. 9–10 (1974), first quoting *Hearings on H.R. 2463 Before the Senate Committee on Judiciary,* 93d Cong., 2d Sess. 96 (1974) U.S. Code Cong. & Admin. News 1974, pp. 7051, 7056. The Senate Committee accordingly modified Rule 301 to its present form, and the Conference Committee adopted the Senate version. H.R. Rep. No. 93–1597, 93d Cong., 2d Sess. 5–6 (1974) U.S.Code Cong. & Admin. News 1974, p. 7098.
The District Court rendered its decision in the instant case long prior to the effective date of the Rules of Evidence, and prior to emergence of the final text. We do not reach the question whether, now that the Rules are operative, we should give Rule 301 per se application on this appeal. It is enough for present purposes simply to point to the anomaly of rendering a judicial decision on an approach that has become a thing of the past.

**38.** See text *supra* at notes 14–15.

**39.** The presumption of due delivery of the mails is predicated upon the fixed methods and systematic operation of the postal service. 1 J. Wigmore, Evidence § 94 at 524 (3d ed. 1940). The presumption of regularity of the Patent Office's handling of incoming mail, text *infra* at note 50, rests on exactly the same phenomena. In sum, both presumptions have a common origin in regularity of action. *Id.* § 92; see C. McCormick, Evidence § 343 at 807–808 (2d ed. 1972). We see nothing suggesting that the methodology buttressing the one is any more or less foolproof than that underpinning the other. We are mindful that some presumptions are founded in part upon exceptionally strong and visible policies, which have been said to persist despite proof rebutting the factual basis for the presumption. See, e. g., C. McCormick, Evidence § 345 at 822–823 (2d ed. 1972). The answer here is that from aught that appears the policy reflections are in equilibrium.

**40.** No papers are received in the Patent Office on Saturdays, Sundays or holidays within the District of Columbia. 37 C.F.R. § 1.6(a) (1975).

**41.** In addition to mail-or hand-delivery during office hours, papers may be deposited, until midnight on weekdays except Saturdays and holidays, in either of two boxes maintained by the Patent Office for that purpose at designated locations, and all papers deposited in those boxes are considered as received in the Patent Office on the day of deposit. 37 C.F.R. § 1.6(c) (1975).

nary mail—other than special delivery, registered and certified—arrives at the Patent Office in bags, which are date-marked if the items contained were placed by the postal service in the Patent Office pouch earlier than the date of delivery of the bags.[42] A number of readers [43] open the wrappers, compare the contents against any included listing—such as a letter of transmittal or a return postcard—and note any discrepancy, and apply to at least the principal included paper a stamp recording thereon the receipt date [44] and the reader's identification number.[45] Another employee then applies to the separate papers the official mail-room stamp, which likewise records the date; [46] the two stamps are used in order to minimize the chance of error. The date recorded in each instance is the date on which the Patent Office actually receives the particular bag of mail, or a previous date when the bag is so marked.[47] From every indication, the affidavit avers, appellees' applications were not delivered to the Patent Office until March 8, 1973.[48]

■ We cannot agree with the District Court that an evidentiary presentation of this caliber would do no more than raise "a presumption of procedural regularity" in the Patent Office.[49] Certainly it would accomplish that much; [50] it would cast upon appellees the burden of producing contra-

**42.** That is because mail placed by the postal service in the Patent Office pouch in Washington up to midnight on weekdays, excepting Saturdays and holidays, is considered as having been received in the Patent Office on the day it is placed in the pouch. 37 C.F.R. § 1.6(b) (1975).

**43.** Nineteen as of January 25, 1975, the date of the affidavits.

**44.** See note 47 *infra* and accompanying text.

**45.** Envelopes—for other than special delivery, registered or certified mail—are not ordinarily retained where the addressee is simply "Commissioner of Patents." See 37 C.F.R. § 1.1 (1975).

**46.** See note 47 *infra* and accompanying text.

**47.** The affidavit on behalf of the Patent Office, in ¶ 2, avows that "[o]rdinary mail (i. e., other than special delivery, registered and certified) is received from the Washington Post Office in bags, some of which are marked to show receipt on a previous day in order to carry out the provisions of Rule 6(b) [37 C.F.R. § 1.6(b)]." App. 65. That rule, as we have stated, provides that mail placed in the Patent Office pouch in Washington before midnight on weekdays is considered as having then been received by the Patent Office. See note 42 *supra*. The affidavit, in ¶ 3, further avers that "[t]he receipt date accorded by the readers corresponds to our actual receipt date for a given bag, or a previous date if the bag is so marked (see paragraph 2, ante)." App. 66.

With all deference to our dissenting colleague, we do not read the allegation from above-quoted ¶ 2 of the affidavit as an indication that mail is sometimes pouched at the Washington post office on one day and delivered to the Patent Office on another day without a bag marking to show the date of pouch-

ing. The affidavit plainly states that "some" bags of mail "are marked to show receipt on a previous day *in order to carry out the provisions of Rule 6(b)*" (emphasis supplied), 37 C.F.R. § 1.6(b) (1975), and the only way the rule can be given effect is to mark all bags containing mail pouched on one day and delivered on another. It seems to us that the word "some" was not intended to suggest that some but not all bags of mail in that category are so marked, but *rather to denote that all bags* are not marked simply because some—the unmarked bags—are delivered to the Patent Office on the date of pouching and are receipt-dated in the Patent Office on that same day. At any rate, any ambiguity as to the actual facts in this regard works in favor of a trial instead of a summary judgment. See text *infra* at notes 59–61.

**48.** An examination of the original papers contained in the files of appellees' four applications revealed that the reader's stamped date and the official stamped date agreed in all instances. A check of a log maintained for identification numbers accorded incoming application papers, which correspond to the serial numbers for accepted applications, further disclosed that the serial numbers on the four applications fell within the range of the identification numbers accorded application papers received on March 8, 1973. A reading of the affiant's calendar, upon which notes were made of matters affecting the operation of the Patent Office's mail branch, uncovered no entry respecting appellees' applications, thus indicating that there had been no error in stamping by mail readers during the period in question.

**49.** See text *supra* at note 15.

**50.** See *United States v. Washington*, 233 F.2d 811, 816 (9th Cir. 1956), and cases there cited.

dictory evidence,[51] but its effect would not be exhausted at that point. The facts giving rise to the presumption would also have evidentiary force,[52] and as evidence would command the respect normally accorded proof of any fact.[53] In other words, the evidence reflected by the affidavit, beyond creation of a presumption of regularity in date-stamping incoming mail, would have probative value on the issue of date of receipt of appellees' applications; and even if the presumption were dispelled, that evidence would be entitled to consideration, along with appellees' own evidence, when a resolution of the issue is undertaken.[54] And, clearly, a fact-finder convinced of the integrity of the Patent Office's mail-handling procedures would inexorably be led to the conclusion that appellees' applications simply did not arrive until the date which was stamped on them.[55]

▪ In the final analysis, the District Court's misstep was the treatment of the parties' opposing affidavits as a contest postulating a question of law as to the relative strength of the two presumptions[56] rather

51. See text *supra* at note 25.

52. *Dunlop v. United States, supra* note 20, 165 U.S. at 495, 17 S.Ct. at 378, 41 L.Ed. at 802; *Knickerbocker Life Ins. Co. v. Pendleton,* 115 U.S. 339, 344–347, 6 S.Ct. 74, 76–78, 29 L.Ed. 432, 434–435 (1885); *United States v. Oddo,* 314 F.2d 115, 117, *cert. denied,* 375 U.S. 833, 84 S.Ct. 50, 11 L.Ed.2d 63 (1963); *Eaton v. Bass,* 214 F.2d 896, 899 (6th Cir. 1954). See also *Security Mut. Life Ins. Co. v. Kleutsch,* 169 F. 104, 105–106 (8th Cir. 1909). See generally 1 J. Wigmore, Evidence §§ 92–93 (3d ed. 1940); C. McCormick, Evidence § 195 (2d ed. 1972).

53. *Stone v. Stone, supra* note 35, 78 U.S.App. D.C. at 7, 136 F.2d at 763 (while presumption that public officer properly performs official duties disappears upon introduction of substantial countervailing evidence, "the basic fact that public officials usually do their duty . . . has and continues to have, throughout the action, that quality and quantity of probative value to which it is entitled, entirely apart from any presumption; just as is true of any other fact which is based upon common experience."); 9 J. Wigmore, Evidence § 2491 at 288–289 (3d ed. 1940); C. McCormick, Evidence § 345 at 821 (2d ed. 1972).

54. And, of course, proven facts sufficient to raise initially a presumption of arrival in due course of the mails are entitled to like value as evidence tending to show such an arrival.

55. In *Wolfgang v. Burrows,* 86 U.S.App.D.C. 340, 341, 181 F.2d 630, 631 (1950), we held that a presumption—there of ownership—"must be countervailed by substantial evidence. . . . The countervailing evidence must, if believed by the trier of the fact issues, establish facts from which reasonable minds can draw but one inference" (citations omitted). By our assessment, the evidence with which the Commissioner is armed amply meets the test. It delineates standard operations, engaging a substantial body of personnel, by which the large volume of Patent Office mail is receipt-dated. Should that evidence be accepted by the trier of fact as satisfactory proof of what the process purports to be—a process reliably recording the date of receipt of each item of mail—the only conclusion rationally possible is that appellees' applications did not reach the Patent Office prior to the date recorded. Should, on the other hand, the finding be that in the instant situation the postal system lived up to the promise of delivery in due course, the conclusion that appellees' applications arrived within the statutory period would be inevitable.

56. See note 39 *supra.* What seems wholly an issue of fact—the actual date of receipt of the applications by the Patent Office—cannot properly be treated as an issue of law. Our disposition poses no dilemma for the parties or the factfinder. The key, we think, is our treatment of the parties' opposing factual presentations ultimately as conflicting evidence rather than simply as presumptions competing for supremacy. The parties would submit their evidence, and findings would be rendered according to the preponderance—the greater persuasive power. Initially the evidence would be gauged for its direct import; basically, the details of the mailing of the applications and those of the receipting of mail in the Patent Office. Assuming satisfaction in these respects, it seems apparent that the conclusion on the pivotal issue—as to whether the applications arrived in due course of the mails or instead on the receipt-date stamped on them— would depend upon a conviction as to the more reliable functioning, in the circumstances of the case, of the two business operations in question—the handling of the mails on the one hand and the date-stamping of Patent Office mail on the other.

The District Court did not have this role when it decided the case on cross-motions for summary judgment. By the same token, it could not have derived from a mere reading of the parties' opposing affidavits the benefits normally accruing from a trial featuring the affidavits as live witnesses. And lest it be forgotten, in the context of a trial there would

than as a prelude to conflicting evidence necessitating a trial. Viewed as the mere procedural devices we hold that they are,[57] presumptions are incapable of waging war among themselves.[58] Even more importantly, the court's disposition of the case on a legal ruling disregarded the divergent inferences which the evidentiary tenders warranted, and consequently the inappropriateness of a resolution of the opposing claims by summary judgment.[59] As only recently we said, "[t]he court's function is not to resolve any factual issue, but to ascertain whether any exists, and all doubts in that regard must be resolved against summary judgment."[60] Here the District Court was presented with an issue of material fact as to the date on which appellees'

---

be ample opportunity for each side to conduct all relevant probes into the factual positions of the other.

57. See text *supra* at notes 23–39. Our dissenting colleague relies heavily on *Charlson Realty Co. v. United States,* 384 F.2d 434, 181 Ct.Cl. 262 (1967). There a petition in a suit for an income tax refund mailed on November 30, 1962, statutorily time-barred after December 6, and date-receipted at the Court of Claims on December 7 was held, on a four to three vote, to be timely. There, as here, it appeared that in due course of the mails the petition should have been received before December 7, but, like here, also that the date-stamping followed a procedure standard for the handling of incoming mail. The authority of *Charlson Realty* is blunted by the divergent opinions contributing to the end result. Three members of the court, one concurring separately, expressed the view adopted by the District Court and the dissent here. *Id.* at 441–448. Three others joined in an opinion espousing the position to which we adhere. *Id.* at 450–456. Judge Nichols, who cast the deciding vote, rested on the conclusion that, within the contemplation of the statute of limitations, the petitioner began his suit before expiration of the prescribed period, irrespective of the date of actual receipt of the petition. *Id.* at 449–450. Even more importantly, Judge Nichols rejected the notion that arrival of the petition prior to December 7 was to be presumed:

> I agree . . . that this petition in cold fact arrived on December 7. Arrival on or before December 6 appears to me to be to all intents not a presumption merely, but a legal fiction. We know that as a practical matter sealed envelopes deposited with the United States Post Office, duly addressed and stamped, do not in this year of grace 1967—and did not in 1962—arrive with any such certainty and regularity as to justify the phrase "due course of mails" as a measure of time. The date of mailing no long warrants any presumption whatever as to date of delivery.

*Id.* at 449.

Moreover, the plurality opinion in *Charlson Realty* would permit rebuttal of the presumption only by "direct and positive proof of affirmative facts." *Id.* at 445. If that means proof of the specifics of the handling of the particular mail items in question, the Patent Office—with mail deliveries exceeding 100,000 items per month—could not possibly satisfy that standard. The result, in practical effect, would invariably be that the presumption would prevail, and to that extent the legal requirement of timely filing would be displaced by an option to substitute a timely mailing. We perceive no reason why, as is generally the case in our jurisprudence, circumstantial as well as direct evidence cannot suffice provided, of course, it convinces the finder of fact.

58. "[P]resumptions do not conflict. The evidentiary facts, free from any rule of law as to the duty of producing evidence, may tend to opposite inferences, which may be said to conflict. But the rule of law which prescribes this duty of production either is or is not at a given time upon a given party. If it is, and he removes it by producing contrary evidence, then that presumption, as a rule of law, is satisfied and disappears; he may then by his evidence succeed in creating another presumption which now puts the same duty upon the other party, who may in turn be able to dispose of it satisfactorily. But the same duty cannot at the same time exist for both parties, and thus in strictness the presumptions raising the duty cannot conflict. There may be successive shiftings of the duty, by means of presumptions successively invoked by each; but it is not the one presumption that overturns the other, for the mere introduction of sufficient evidence would have the same effect in stopping the operation of the presumption as a rule of law." 9 J. Wigmore, Evidence § 2493 at 292 (3d ed. 1940).

59. See *Washington Post Co. v. Keogh,* 125 U.S. App.D.C. 32, 34, 365 F.2d 965, 967, 20 A.L.R.3d 972 (1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967).

60. *Bouchard v. Washington,* 168 U.S.App.D.C. 402, 405, 514 F.2d 824, 827 (1975). See also *Weiss v. Kay Jewelry Stores,* 152 U.S.App.D.C. 350, 352–353, 470 F.2d 1259, 1261–1262 (1972); *Nyhus v. Travel Management Corp.,* 151 U.S. App.D.C. 269, 271, 466 F.2d 440, 442 (1972); *Underwater Storage, Inc. v. United States Rubber Co.,* 125 U.S.App.D.C. 297, 300, 371 F.2d 950, 953 (1966), *cert. denied,* 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784 (1967).

applications were received by the Patent Office, and summary judgment was not in order.[61]

The judgment appealed from is accordingly reversed, and the case is remanded to the District Court for further proceedings. The cross-motions for summary judgment will be denied, and the case will be set down for trial on the merits in regular course.

*So ordered.*

FAHY, Senior Circuit Judge (dissenting):

I am in essential agreement with Judge Waddy of the District Court.[1] The evidence reflected in the affidavit relied upon by the Patent Office in my opinion is not sufficient to overcome the strong presumption arising from the evidence reflected in the affidavits filed by appellee—a presumption of law that the applications were received by the Patent Office in regular course of the mails, that is, not later than March 6, 1973:

Where, as in this case, matter is transmitted by the United States mails, properly addressed and postage fully prepaid, there is a strong presumption that it will be received by the addressee in the ordinary course of the mails. *Henderson v. Carbondale Coal & Coke Co.*, 140 U.S. 25, 11 S.Ct. 691, 35 L.Ed. 332 . . .; *Crude Oil Corp. v. Commissioner*, 10 Cir., 161 F.2d 809, 810. While the presumption is a rebuttable one it is a very strong presumption and can only be rebutted by

specific facts and not by invoking another presumption.
*Arkansas Motor Coaches v. Commissioner of Internal Revenue*, 198 F.2d 189, 191 (8th Cir. 1952).[2]

In *Charlson Realty Company v. United States*, 384 F.2d 434, 181 Ct.Cl. 262 (1967), the Court of Claims considered at length the relative weight of this mail presumption compared with a file-stamped date of receipt. In the opinion of Judge Skelton, for himself, Chief Judge Cowen and Senior Judge Jones, the latter also concurring separately, it is stated:

The evidence as to the habit and custom of the court's officers and employees in handling the mail is negative evidence and has no appreciable value in proving the omission or commission of a specific act at a particular time when there is a presumption to the contrary as in this case. . . .

. . . . .

. . . . .

. . . [T]o overcome the strong presumption of the arrival of a letter in due course of the mails, the countervailing evidence must show the contrary to be true by direct and positive proof of affirmative facts.
*Id.* at 444–445.

Judge Nichols concurred, placing his position upon his view of the intent of Congress in the situation presented.[3]

---

**61.** Fed.R.Civ.P. 56(c); *Bouchard v. Washington, supra* note 60, 168 U.S.App.D.C. at 405, 514 F.2d at 827.

**1.** *Legille v. Tegtmeyer*, 382 F.Supp. 166 (D.D.C. 1974).

**2.** In *Wolfgang v. Burrows*, 86 U.S.App.D.C. 340, 341, 181 F.2d 630, 631 (1950), involving the presumption of ownership of a diamond arising from its purchase and possession by its claimant, the court held that the presumption:

must be countervailed by substantial evidence. . . . The countervailing evidence must, if believed by the trier of the fact issue, establish facts from which reasonable minds can draw but one inference.

**3.** Judge Davis for himself and Judges Laramore and Durfee dissented. The dissenting opinion, however, while at odds with the reasoning of

Judge Skelton, viewed the evidence offered to rebut the mail presumption as proof of more than a custom or habit respecting its receipt:

Not only has the defendant presented uncontradicted evidence of the general and specific procedures employed by the clerk's office to ensure the proper handling and dating of incoming mail, but the evidence has also described with considerable specificity the movements, observations and actions of members of the clerk's office (as they relate to plaintiff's claim) during the critical days.
*Id.* at 452–453.

No such specificity relating to receipt of the applications in this case appears in the affidavit of the Patent Office. Judge Davis also relies in part upon *United States v. Lombardo*, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916). There the Court pointed out that a filing "is not complete until the document is delivered and

There are indeed cases in which the mail presumption has not prevailed. Appellant refers to *Evans v. Jones,* 366 F.2d 772 (4th Cir. 1966), and *Ward v. Atlantic Coast Line Railroad Company,* 265 F.2d 75, 80 (5th Cir. 1959). Both cases were concerned with the jurisdictional requirement of timely filing of a notice of appeal.[4] They do not seem to warrant appellant's suggestion that they indicate the absence of a general presumption of delivery of the mails in due course. Such a general presumption is well documented by cases referred to in the opinion of Judge Robinson for the court in the present case. And see our recent decision in *Johnson v. Basic Construction Co.,* 139 U.S.App.D.C. 85, 429 F.2d 764 (1970).

There are also cases, as the court's opinion again demonstrates, in which the facts which give rise to the mail presumption are considered simply as part of the total evidentiary situation bearing upon the issue of the time of receipt of a mailed paper. The opinion of the court in the present case so considers the facts reflected in the respective affidavits. But the authorities relied upon for submitting to the fact-finder in this manner the issue referred to are not in my view helpful in the situation before us now. The agency of the Government here involved contemplates the use of the mails for the conduct of business with it, as appellees did. The applications were air-mailed at Hartford, Connecticut, March 2, in ample time to be received by the Patent Office by March 6, giving rise to the strong presumption that they actually were so received, a presumption not lightly to be rebutted. The inadequacy of the evidence reflected in the Patent Office affidavit to accomplish rebuttal I think is demonstrable, even if it

be assumed that the procedures detailed in the affidavit did more than raise a competing presumption and constituted affirmative evidence the applications were not physically received at the Patent Office building until March 8; for Rule 6(b) of the Rules of Practice and Procedure in Patent Cases, 37 C.F.R. § 1.6(b) (1974), states:

> Mail placed in the Patent Office pouch up to midnight on weekdays, excepting Saturdays and holidays, by the Post Office at Washington, D. C., serving the Patent Office, is considered as having been received in the Patent Office on the day it was so placed in the pouch.

The affidavit relied on by the Patent Office does not reflect evidence indicating when these applications were placed in the Patent Office pouch at the Washington, D.C., Post Office serving the Patent Office. Giving the affidavit an interpretation favorable to appellant it can be read to indicate that some bags or pouches are marked with the date that they are readied at the Post Office to go to the Patent Office if that date is different from the date of physical delivery to the Patent Office. Under this reading, other bags when received at the Patent Office are unmarked. More importantly, the practice and custom set forth in the affidavit of the Patent Office shows nothing as to the time the particular applications in suit were placed in the Patent Office pouch at the Washington Post Office, and thus received under Rule 6(b). The affidavit shows only that they were stamped "March 8" at the Patent Office. Their actual movement or location at any time prior thereto is not indicated by the Patent Office affidavit.[5]

received," 241 U.S. at 76, 36 S.Ct. at 509, and that "shall file"
> means to deliver to the office and not send through the United States mails. . . . A paper is filed when it is delivered to the proper official and by him received and filed.
> *Id.* This statement from *Lombardo,* however, was made by the Court with respect to the place rather than the time a document was filed. The Court was rejecting a claim that a document actually had been filed in Washington, D. C., by simply being placed in the

mail far away in the Western District of Washington.

4. *And see Stone v. Stone,* 78 U.S.App.D.C. 5, 136 F.2d 761 (1943), which, however, did not involve the presumption relied upon by appellees respecting the mails.

5. In support of its statement that the practice of the Patent Office is to file such applications upon receipt, the court in footnote 3 cites 37 C.F.R. § 1.6(a). This regulation merely provides in pertinent part:

The case was in the above posture when the parties submitted it to the District Court for decision on cross-motions for summary judgment. Since the strong presumption available to appellees was not rebutted by the evidence reflected in the affidavit relied upon by appellant the motion of appellees was properly granted by the court. No genuine issue of material fact required its denial and appellees were entitled to judgment as a matter of law. Rule 56(d), Fed.R.Civ.P. I would affirm and, accordingly,

I respectfully dissent.

Letters and other papers received in the Patent Office are stamped with the date of receipt. . . .

This book rule does not evidence when a document was actually received. It sets forth only a routine procedure and does not guarantee its performance; nor does a date stamped on a document evidence anything other than that a date was stamped on it, which of course is not evidence of when the applications before us were received either in the Patent Office pouch at the Post Office or at the Patent Office, or even as to when the date stamp itself was applied. The strong presumption of receipt of these applications in the regular course of the mails, not later than March 6th, is not overcome by such evidence of procedure or by a date on them which does not speak to a time of receipt in the Post Office pouch or at the Patent Office.

Footnote 42 is appended to the text of the opinion after a statement that ordinary mail, such as is here involved, arrives at the Patent Office in bags which are date-marked if the items contained were placed by the Postal Service in the Patent Office pouch on a date earlier than delivery of the bag. The court here indicates a misunderstanding of my position. I do not question that the procedure referred to requires all bags filled at the Post Office on Day 1 and delivered on a later day to be marked "Day 1". Nevertheless, as I point out, "other bags [those delivered the day they are filled] when received at the Patent Office are unmarked." There is accordingly no ambiguity in the procedure set forth in the rule which calls for a trial to clarify the ambiguity as suggested by the Court.

The Patent Office affidavit makes no pretense that the bag in which these applications reached the Patent Office was marked, nor does it state anything as to the date the bag containing these applications was filled at the Post Office or physically delivered to the Patent Office.

The gist of the matter is that the strong presumption that the applications were received no later than March 6th I think is not overcome by merely setting forth the routine procedure with nothing shown as to what actually occurred with respect to the bag containing the applications or the applications themselves except that they were found to have been marked "March 8".

The court's remand, as it seems to me, has the effect of putting on trial the procedure of the Patent Office and the stamped date "March 8", on the one hand, and, opposed to this, the evidence which gave rise to the strong legal presumption the applications were actually received in the Patent Office pouch at the Post Office or at the Patent Office no later than March 6. To resolve the issue unassisted by the legal presumption would thus call for a speculative finding. In this situation the principled basis for decision, resting upon sound precedent, would be to hold, as the District Court held, that the strong mail presumption was not rebutted by the kind of evidence required to do so.